DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court judgment that modified the child support obligation of Brian J. Kerbyson, plaintiff below and appellee herein. Nora G. Kerbyson, defendant below and appellant herein, assigns the following errors for review:
First Assignment of Error:
"The trial court erred in failing to include in plaintiff's income severance pay received from a former employer."
Second Assignment of Error:
"The trial court erred in failing to impute income to plaintiff who quit his former position of employment."
Third Assignment of Error:
"The trial court erred in reducing plaintiff's income by the amount of student loan payments."
 {¶ 2} The parties married on December 27, 1989. Two children were born as issue of that marriage: Meghan M. Kerbyson (d/o/b 6-5-91) and Emma C. Kerbyson (d/o/b 5-17-94). On August 20, 1996, the couple filed a petition for dissolution of marriage together with a separation agreement. Their agreement provided for marital property disposition, shared parenting and child support payments. The trial court accepted their agreement and, on September 30, 1996, dissolved the marriage and adopted their various agreements. To that end, the court ordered shared parenting (with appellant serving as the primary residential parent) and ordered appellee to pay $2,186.48 per month in child support.
 {¶ 3} On June 8, 1998, the trial court granted appellee's motion to modify his support obligation. The court found that appellee's income had "substantially declined since the last calculation" and noted that appellant must make substantial student loan payments to repay debt incurred to attend medical school. Accordingly, the trial court adjusted appellee's support obligation from $2,186.48 per month to $1,423.75 per month. We affirmed that judgment in Kerbyson v. Kerbyson (Jan. 23, 1999), Washington App. No. 98CA23 (Kerbyson I).
 {¶ 4} On June 24, 2003, the Washington County Child Support Enforcement Agency (CSEA), pursuant to R.C. 3119.60 et seq., conducted an administrative review of appellee's child support obligation and issued an "Adjustment Recommendation." In its recommendation, the CSEA recommended that appellee pay $1,098.68 per month in child support. While this amount is a reduction from appellee's existing obligation, appellee nevertheless objected and requested a court hearing. The matter came on for consideration and, on September 24, 2003, the court sustained appellee's "objection" and set the child support obligation at $1,059 per month.[1] This appeal followed.
 I {¶ 5} Appellant argues in her first assignment of error that the trial court erred by not considering appellee's severance pay in calculating child support. We agree, albeit reluctantly.[2]
 {¶ 6} The provisions of R.C. 3109.01(C)(7) expressly include "severance pay" within the definition of "gross income" for the purposes of calculating child support. It is axiomatic that statutes mean what they say. State v. McPherson (2001),142 Ohio App.3d 274, 280, 755 N.E.2d 426; Lucas Cty. Auditor v. OhioBur. of Emp. Serv. (1997), 122 Ohio App.3d 237, 246,701 N.E.2d 703; Woods v. Farmers Ins. of Columbus, Inc. (1995),106 Ohio App.3d 389, 394, 666 N.E.2d 283. Thus, any calculation of gross income for child support must include a parent's severance pay.
 {¶ 7} Appellee testified that he left his previous employer in December, 2002, and started with his new employer in January of 2003. He provided the following explanation for the financial arrangements upon departure from his old job:
 {¶ 8} "Q. And you took a 50,000 — $53,000 severance package with them?
 {¶ 9} "A. Something like that. I don't recall the amount.
 {¶ 10} "Q. And when was that paid?
 {¶ 11} "A. December.
 {¶ 12} "Q. Of 2002?
 {¶ 13} "A. December of 2002.
 {¶ 14} "Q. And they put it on your W-2, correct?
 {¶ 15} "A. Yeah."
 {¶ 16} This exchange establishes that appellee received severance money. R.C. 3109.01(C)(7) clearly dictates that this money should have been included in appellee's gross income when calculating child support. At the conclusion of the hearing, the trial court appeared to acknowledge the statute, but indicated that it would disregard its provisions because the statute would require everyone to "come back in January, and do it all [over] again" the following year. While we sympathize (and somewhat agree) with the trial court's desire to improve judicial economy, we are nevertheless constrained to apply R.C. 3109.01 (C)(7) as written. See McCoy v. McCoy (1995), 105 Ohio App.3d 651, 657,664 N.E.2d 1012. Thus, appellee's severance pay must be included in his gross income for purposes of calculating child support.[3]
 {¶ 17} Appellee responds with several counter arguments. First, he posits that his ex-wife waived this issue because she did not file her own objection to the CSEA decision to exclude severance pay from his income. We are not persuaded.
 {¶ 18} When reviewing an administrative adjustment, the provisions of R.C. 3119.66 require a trial court to essentially determine an "appropriate amount" of child support to be paid. In determining what is an "appropriate amount" to be paid, courts should not be limited solely to those issues raised by the parties during the course of the proceedings. We emphasize that child support is for the benefit of the child (not the custodial parent) and that the "polestar" in every support determination case is the child's best interests. Rock v. Cabral (1993),67 Ohio St.3d 108, 110, 616 N.E.2d 218; Marker v. Grimm (1992),65 Ohio St.3d 139, 141-142, 601 N.E.2d 496.
 {¶ 19} We further point out that appellant cites to us no authority in which waiver has been found in this context and we have found none in our own research.[4] That said, without some affirmative indication from the Ohio General Assembly or the Ohio Supreme Court, we decline to limit a trial court's authority to consider any and all pertinent issues when determining an appropriate amount of "child support."
 {¶ 20} Appellee also cites to a number of cases from this district and others where, in estimating income for the purpose of a child support calculation, courts indicate a preference for current data over income/expense data from previous years. We find none of these cases particularly persuasive. Without going into the factual details of each case, none of them involved a specific statutory provision requiring a particular item to be included in the calculation of income. In this case, R.C.3109.01(C)(7) requires that severance pay be included in income. Again, we cannot disregard the express directives of the Ohio General Assembly. McCoy, supra at 657.
 {¶ 21} Appellee also cites our McCoy decision and argues that no evidence exists to prove that this sum is actually "severance pay" as opposed to a "buyout" or some other such item that could be excluded from gross income pursuant to R.C. 3119.01
(C)(8).[5] Again, we are not persuaded. Appellee admitted during the trial court proceeding that he received this "severance pay." This is sufficient evidence for the trial court to so find.
 {¶ 22} For these reasons, we agree with appellant that the trial court erred by excluding appellee's 2002 severance package from its calculation of income for purposes of determining child support. Accordingly, we hereby sustain her first assignment of error.
 II {¶ 23} Appellant asserts in her second assignment of error that appellee quit his previous job, is voluntarily underemployed at his current job and that the trial court erred in failing to impute to him additional income. We disagree.
 {¶ 24} First, to argue that appellee simply "quit" his previous job is not a completely accurate view of the evidence in the record. The uncontroverted evidence reveals that appellee was a co-owner in "Quick Care" (an urgent care medical practice), became embroiled in a contract dispute with one of the other (more senior) co-owners and left his employment as part of the "settlement" of that dispute. Appellee did not simply leave his employer because he was tired of working or wanted a change.
 {¶ 25} Second, while appellee may be underemployed as a physician, the evidence in the record does not necessarily suggest that he is voluntarily underemployed.[6] Appellee testified that he was not happy earning less money than he did at Quick Care, but was constrained in the type of medical jobs he could take because he did not complete a residency after medical school. Indeed, appellee explained that every time he looked for a job, he kept "running into a wall about . . . the residency issue." No evidence was adduced to the contrary and we find no error in the trial court's apparent conclusion that appellee's underemployment was involuntary.
 {¶ 26} Assuming arguendo that the trial court had erred in not finding that appellee was voluntarily underemployed, we further note that appellant adduced no evidence to assist the trial court in arriving at an income amount that could be imputed. While appellee's 2002 W-2 from Quick Care showed him earning $195,103.02 for the last year of his employment, part of that amount consisted of severance pay. Appellee was also a principal in that practice. Thus, appellee's earnings would not have been a good indicator of what he would have earned in the first year of employment at another practice as a staff physician rather than a co-owner of the business.
 {¶ 27} In the end, a determination of voluntary underemployment and the decision whether to impute income are left to trial court's sound discretion and will not be reversed on appeal absent an abuse of discretion. Rock, supra at the syllabus; also see Cole v. Cole (Dec. 15, 2000), Jackson App. No. 00CA3; Slone v. Slone (Mar. 22, 1999), Pike App. No. 98CA610. We note that an abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Landisv. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342,695 N.E.2d 1140; Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel. Solomonv. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486.
 {¶ 28} When reviewing a matter under the abuse of discretion standard of review, appellate courts are admonished that they must not substitute their judgment for that of the trial court.See State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991).57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181; Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Indeed, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1; also see Bragg v.Hatfield, Vinton App. No. 02CA567, 2003-Ohio-1441, ¶ 22. In the case sub judice, we find no abuse of discretion committed by the trial court and appellant's second assignment of error is hereby overruled.
 III {¶ 29} Appellant argues in her third assignment of error that the trial court erred by allowing appellee to reduce his income for purposes of child support computation by the amount of his student loan payments. She acknowledges we held that such a reduction is permissible under Kerbyson I, but argues that the basis for such decision no longer applies. Specifically, appellant cites that portion of Kerbyson I in which we wrote that "[b]etter educated people make more money as a rule, and thus there will be more money to support the child . . ." Because appellee has a new job with a reduced income, appellant argues, this reasoning no longer applies and there is no justification to allow him to deduct his student loan payments. We disagree with appellant.
 {¶ 30} We noted in Kerbyson I that student loans are generally good investments and that educated people generally earn higher incomes than noneducated people. That was true then and it remains true now. The trial court found that appellee currently earns $85,000 per annum. We assume that this amount is greater than most of the families in Washington County earn in a year and is clearly attributable to appellee's medical training for which he took out the loans in the first place.[7]
 {¶ 31} We further note that nothing in Kerbyson I made its application contingent on an income increase. Whether appellee earns $80,000 per year or $800,000 per year, the fact remains that he earns more than most people. Those earnings benefit his children and provide them with a higher level of support than those children whose parents do not have a medical education. Our reasons for allowing the deduction of student loan payments inKerbyson I still apply. For all these reasons, we find no merit in the third assignment of error and it is accordingly overruled.
 {¶ 32} Having sustained appellant's first assignment of error, the judgment of the trial court is affirmed in part and reversed in part. The matter is remanded to the trial court for the limited purpose of recalculating a child support obligation that is based on a gross income figure that includes appellee's severance pay for the 2002 tax year.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
Kline, P.J.: Concurs in Judgment Opinion.
Harsha, J.: Concurs in Judgment Opinion as to Assignments of Error II III; Concurs in Judgment Only as to Assignment of Error I.
[1] This new amount is $39.68 per month less than the amount that CSEA recommended.
[2] We parenthetically note that the CSEA also did not include the severance pay in its calculation of income. Indeed, the earned income the trial court attributed to appellee was $85,000 per year whereas the CSEA attributed earned income of $81,600.
[3] We note that we share the trial court's concern for judicial economy. Appellee's severance pay amounted to more than one-third his income for 2002. Because this is a one-time payment, the parties must recalculate support for 2004. Nevertheless, this is what the statute requires. Given that severance pay is income, the minor children are entitled to a portion of that income for their support.
[4] Appellee does cite Fury v. Fury (Aug. 9, 2002), Huron App. No. H-02-009 and Manning v. Manning (Mar. 6, 2002), Wayne App. No. 01CA63. We, however, find no support in those cases for his argument.
[5] R.C. 3109.01(C)(7) states gross income does not include, inter alia, "non-recurring or unsustainable income." Id. at (e). "Non-recurring" income is defined as income received in any year that the parent "does not expect to continue to receive on a regular basis." Id. at (C)(8). In McCoy v. McCoy (1995),105 Ohio App.3d 651, 657, 664 N.E.2d 1012, we held that the more general provisions of (C)(8) could not be used to circumvent the clear legislative directive set out in (C)(7). In other words, "severance pay" must be included in the calculation of gross income notwithstanding the provisions of subsection (C)(8).
[6] "Gross income," for purposes of calculating child support, includes "potential cash flow [or income] from any source." R.C.3119.01(C)(7). "Potential income" is defined to include "imputed income" which a trial court determines a parent would have earned if fully employed as determined by such factors as the parent's education, special skills and training. Id. at (C)(11)(a)(ii) 
(vi). Courts cannot impute potential income under this statute without first finding voluntary unemployment or voluntary underemployment. Inscoe v. Inscoe (1997), 121 Ohio App.3d 396,424, 700 N.E.2d 70, 88; Leonard v. Erwin (1996),111 Ohio App.3d 413, 417, 676 N.E.2d 552, 555. No such finding was made in the case sub judice.
[7] The United States Census Bureau considers $64,282 to be the median income for a family of four living in the State of Ohio. See http://www.census.gov/hhes/income/4person.html. Appellee's income clearly exceeds that figure.