DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment regarding the custody and support of the children of Michael H. Rodriguez, plaintiff below and appellee herein, and Jill M. Frietze, defendant below and appellant herein. The following errors are assigned for our review:
 First Assignment of Error:
"The Trial Court Erred In Retroactively Modifying Another State's Child Support Order."
 Second Assignment of Error:
"The Trial Court Abused its Discretion to Impute Income to The Appellant."
 Third Assignment of Error:
"The Trial Court Erred in Reallocating the Parties' Parental Rights and Responsibilities."
 {¶ 2} The parties married on June 17, 1989 and three children were born as issue of that union: Ryan Rodriguez (d/o/b 1-7-90), Stephen Rodriguez (d/o/b 8-14-91) and Arcadia Rodriguez (d/o/b 2-8-96). The couple divorced in Dona Ana County, New Mexico, in the Spring of 2000. At that time the court awarded the parties "joint legal custody" of the minor children with the appellant having "primary periods of responsibility." The court ordered the appellee to pay $550 per month in child support.
 {¶ 3} Shortly after their divorce, the appellee obtained employment with Ohio University as a "Student Professional Development Manager". Because of the financial difficulties involved in the move to Ohio, and because the parties thought that the children would benefit with both parents actively involved in their lives, the appellant moved to Ohio as well. The couple thus decided to take up residence together in Athens.[1]
In light of the fact that the parties were now once again living together, the appellee stopped paying child support as required in the original New Mexico divorce decree.
 {¶ 4} After moving to Ohio, the parties once again encountered domestic difficulties. On May 9, 2002, the appellee initiated the instant proceedings and filed a "notice" of registration of foreign divorce decree as well as a motion for reallocation of parental rights and responsibilities. Appellee alleged that his ex-wife's life is "unstable," that she spent all of her time with her new boyfriend, that she had been arrested for "OMVI" and that she threatened to take the children either to New York or to New Mexico to start a new life. Appellee requested the trial court to assume jurisdiction over the case and to designate him the minor children's residential parent and legal custodian. That same day, the magistrate issued an order to restrain either party from changing the children's residence during the pendency of the action.
 {¶ 5} On May 29, 2002, the appellant filed an affidavit with the trial court that charged, among other things, that (1) the appellee had raped her twice after she moved to Ohio and was both physically and verbally abusive towards her, (2) that her sons mimicked their father's abusive behavior towards her; and (3) that the appellee bordered on physical abuse towards his daughter. Appellant further related that she wanted to return to New Mexico and asked the trial court to (1) enforce the original divorce decree and (2) to allow her to take the minor children to New Mexico. Subsequently, the case was referred to mediation. It appears, however, that the two sides could not amicably resolve the case.
 {¶ 6} After mediation failed, the appellant apparently decided to take matters into her own hands. On August 22, 2002, under the ruse of visiting friends in Pennsylvania, the appellant took Arcadia to New Mexico. On September 11, 2002, the magistrate issued a temporary order that named the appellee as the primary residential parent for the three children and ordered the appellant to return Arcadia to Ohio. Armed with this order, the appellee traveled to New Mexico and retrieved his daughter.[2] Appellant stayed in New Mexico and through counsel objected to the temporary order. Those objections were subsequently overruled and the trial court approved the order.
 {¶ 7} The matter came on for a hearing on June 2, 2003. Each side testified as to the parenting skills of the other. Appellant related that her ex-husband raped her, was verbally and physically abusive and, in a fit of rage, grabbed and twisted his daughter's arm.
 {¶ 8} Appellee characterized his ex-wife's rape and abuse allegations as "preposterous."[3] He also described her increasing belligerence, alcohol abuse[4] and how everyone had to "walk on egg shells" around her. Appellee also testified about the appellant's previous OMVI convictions in Ohio and New Mexico.
 {¶ 9} As the parties awaited a decision, the appellee's lease was set to expire on his Athens rented house. Appellee signed another lease on a house in The Plains, Athens County, Ohio and he and the children moved to the new location on July 8, 2003. While his home address and home phone number changed, he kept the same cell phone number and work number so that the appellant (in New Mexico) could reach him. Appellee also notified his ex-wife of his new address shortly after the move.
 {¶ 10} On July 14, 2003, the magistrate issued a detailed proposed decision that recommended that the court assume jurisdiction over the case. The magistrate noted that the parties and the children all lived in Ohio prior to the start of the proceedings. The magistrate also noted that a significant change in circumstances occurred as the parties moved from New Mexico to Ohio and the children were now established in Ohio. Consequently, the magistrate concluded that the appellee should be named the children's legal custodian and residential parent and that the appellant should be ordered to pay child support.
 {¶ 11} The day after the magistrate issued the proposed decision, the appellant filed a motion to hold the appellee in contempt of court for moving to a new residence. The gist of her motion was that the magistrate's May 9, 2002 order, together with the original New Mexico decree, prohibited the appellee from unilaterally changing residences. After a hearing on this issue, the magistrate issued a proposed decision to overrule the contempt motion. The magistrate found that its May 9th
order was superseded by subsequent judgments that did not prevent the appellee from moving to another residence. Furthermore, the appellee's reason for the move was because the landlord had not made necessary repairs to the old home. The magistrate also found "no way in which [appellant] was prejudiced by the move."[5] Appellant filed objections to the report. On September 24, 2003 the trial court adopted the magistrate's report.
 {¶ 12} Appellant also objected to the magistrate's July 14th
proposed decision that recommended a reallocation of parental rights and responsibilities. She argued, inter alia, that the court's assumption of jurisdiction over this case violated both New Mexico's continuing jurisdiction and the federal Parental Kidnaping Protection Act. Additionally, even if the trial court did have jurisdiction, appellant continued, it did not have the authority to "dictate retroactive modification" of child support in the New Mexico divorce decree.
 {¶ 13} On February 11, 2004, the trial court rejected the appellant's objections and adopted the magistrate's recommendations. The court held that Ohio had jurisdiction of the matter by virtue of the fact that all parties concerned lived in Ohio at the time the action was commenced. In addition, the court agreed with the magistrate that a change of circumstances necessitated a modification in parental rights and responsibilities and that appellee should be named the children's residential parent. The trial court also ordered the appellant to pay child support. This appeal followed.
 I {¶ 14} We first turn to the appellant's third assignment of error. Appellant asserts that the trial court erred in reallocating parental rights and responsibilities. Appellant actually makes two arguments (1) the court erred in "unilaterally assuming jurisdiction;" and (2) even if the court had jurisdiction, it erred in naming the appellant as the children's legal custodian. {¶ 15} The instant proceedings are governed by the Uniform Child Custody Jurisdiction Act (UCCJA) which Ohio adopted and codified at R.C.3109.21 et seq. The provisions of R.C. 3109.22(A) prohibit Ohio courts from exercising jurisdiction to make parenting decisions unless, inter alia, Ohio "is the home state of the child at the time of the commencement of the proceedings." Id. at (A)(1). A "home state" is defined as that state where the child lived with a parent or parents for at least six consecutive months before commencement of the action. R.C.3109.21(E).
 {¶ 16} The record in the case sub judice clearly supports a finding that the parties and the minor children were all residents of Ohio for almost two years prior to the filing of the motion to modify parental rights and responsibilities. Appellant conceded that she and the children moved to Ohio in 2000. There was, however, some dispute over the ramifications of a 2001 summer trip to New Mexico. Appellee contends that he took the appellant and their children to New Mexico to visit relatives over the summer. Appellant maintains that she made the decision to permanently stay in New Mexico. Whatever the case may be, the undisputed fact is that the appellant and the children returned to Ohio later that year thus supporting the trial court's finding that the 2001 trip was a mere visit and not an attempt to reestablish New Mexico residence.
 {¶ 17} Even if the New Mexico trip could be counted as a change of residence for a few months, this does not negate the fact that the children were in Ohio for the start of the 2001 school year. Given that the trial court proceedings were not commenced until the following May, this is well within the six month time frame for assumption of jurisdiction. See R.C. 3109.22(A)(1). We therefore agree with the trial court that Ohio properly had jurisdiction over the matter.
 {¶ 18} Appellant counters that, jurisdiction notwithstanding, the trial court should have contacted the Third Judicial Court of Dona Ana County, New Mexico, to ascertain if that court intended to assert jurisdiction to modify its allocation of parental rights and responsibilities in the original divorce decree. We are not persuaded. Appellant cites no jurisdiction, and we have found none in our own research, in which a trial court has retained jurisdiction over a custody determination several years after all the parties have moved to a different state. Indeed, that view would require these five individuals — all of whom were residents of Ohio when this case was initiated — to travel approximately 1,700 miles to resolve legal proceedings that could be addressed in a forum just a few miles from their home.
 {¶ 19} Appellant also argues that R.C. 3109.31 required the trial court to ascertain if a pending proceeding existed in the New Mexico court. She further contends that the record from New Mexico is incomplete and that the trial court should have obtained the "shared parenting plan" to which she and her exhusband agreed as part of the divorce.
 {¶ 20} First, we find no indication that any "pending proceedings" existed in New Mexico at the time this case began and, given that the parties all left that state several years ago, it is more than unlikely that any such proceedings existed.[6] Second, we note that the record does contain a copy of an "Amended Parenting Plan" from the original divorce, sent to Ohio by the Dona Ana County District Court in an envelope postmarked June 24, 2002. Thus, the trial court had that document. Third, if any proceedings existed in New Mexico, or if any other documents existed that the trial court should have had before it decided this case, it was incumbent on the parties to bring them to the court's attention rather than to sit idly by and wait to raise the issue after the court issued a decision adverse to the appellant's interests.
 {¶ 21} Moreover, in Bowen v. Britton (1993), 84 Ohio App.3d 473,481, 616 N.E.2d 1217, this court held that R.C. 3109.31(A) did not preclude an Ohio court from determining a motion to modify a foreign custody decree when neither the parents nor the children had resided in that state for several years. See also In re West (Dec. 24, 2001), Washington App. No. 01CA8 (parents and children all moved to Ohio from West Virginia). The same principle applies here. Both of the parents and their children resided in Athens County, Ohio, for almost two years prior to this case being initiated. It is highly unlikely that New Mexico would want to retain jurisdiction in light of those facts. Further, it would have been an enormous inconvenience for the parties to return to New Mexico to litigate these issues.
 {¶ 22} Finally, we note that a decision to exercise jurisdiction pursuant to the UCCJA is left to the trial court's discretion and its decision should be reversed only upon an abuse of discretion. Bowen,
supra at 478; Snowberger v. Wesley, Summit App. No. 21866, 2004-Ohio-4587, at ¶ 8; In re Sklenchar, Mahoning App. No. 04MA55, 2004-Ohio-4405, at ¶ 28; Justis v. Justis (Nov. 20, 1996), Meigs App. No. 96CA11. We note that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel.Solomon v. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. When applying the abuse of discretion standard, appellate courts are admonished to not substitute their judgment for that of the trial court. See State ex rel.Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732,654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181; Berk v. Matthews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301. To establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1; also see Bragg v. Hatfield, Vinton App. No. 02CA567, 2003-Ohio-1441, ¶ 22.
 {¶ 23} In the case sub judice, we believe that the trial court had jurisdiction over all the parties to this case. We also point out that this is not the type of situation that the UCCJA was intended to speak to. The UCCJA is a legislative response to the vexing problem of "interstate child snatching" by parents who sought a favorable custody award in the forum of their choice, thus leading to "jurisdictional deadlocks" among the states and a national epidemic of parental kidnaping. See Connor v. Renz (Dec. 29, 1994), Athens App. Nos. 94CA1605 94CA1606. A main purpose of the UCCJA is to avoid jurisdictional conflict between states and to deter abductions and other unilateral removal of children undertaken to obtain favorable custody awards, and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interests of the child. Id.; Kachele v. Kachele (1996), 115 Ohio App.3d 609,685 N.E.2d 1283 citing State ex rel. Aywck v. Mowery (1989),45 Ohio St.3d 347, 544 N.E.2d 652; also see Annotation (1991), 83 A.L.R.4th 742, 747-748, § 2; Annotation (1990), 78 A.L.R.4th 1028, 1034, § 2; Sections 1(a)(1) (5) of the uniform Act in 9 Uniform Laws Annotated Part I (1988) 124.
 {¶ 24} We note that the instant case does not involve "child snatching". Neither parent traveled to a different jurisdiction to obtain a favorable ruling against a parent in another jurisdiction. Rather, both parents and their children lived in Athens County, Ohio for many months with the obvious intent of making Ohio their home. Appellee did not file his custody modification motion to get a forum which he thought may treat him more favorably as an "in-state" parent. Indeed, both parents are (or were at that time) residents of Athens County, Ohio. It made sense that the trial court is the proper court to decide this matter rather than a court in a state where neither of the parties or their children had lived for some time. We therefore conclude that the trial court properly asserted jurisdiction in this case.
 {¶ 25} We now turn to the appellant's second argument in this assignment of error: notwithstanding the issue of jurisdiction, the trial court committed reversible error in reallocating parental rights and responsibilities to the appellee. Appellant contends that the court "failed to recognize any presumption favoring retaining the mother as primary parent to which she might have been entitled under [R.C.] 3109.04(E)(1) (a)." (Emphasis added.)[7] We note, however, that the appellant has not stated what "presumption" she refers to.
 {¶ 26} Her next argument is that the trial court failed to consider her testimony concerning rape and domestic violence and the adverse effects it had on her son(s). We note that the evidence of rape and domestic violence in this case was highly controverted. Although the appellant emphatically testified that she had been the victim of such abuse, the appellee stridently denied that it was ever perpetrated. Appellant also produced (1) no records or reports to demonstrate that she attempted to initiate criminal charges against the appellee or that she sought assistance from a domestic violence program provider, and (2) no other evidence to corroborate her assertions.
 {¶ 27} We note that the trier of fact is best able to view the witnesses and observe the gestures, demeanor and voice inflections and to use those observations to weigh credibility of their testimony. SeeSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. The trier of fact is free to believe all, part or none of the testimony of each witness. See Barber v. Barber (July 30, 1992), Ross App. No. 1804; see, also, State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144. The trial court, in turn, is entitled to rely on the magistrate's decisions regarding credibility when it decides whether to adopt the magistrate's recommendations. Holm v.Smilowitz (1992), 83 Ohio App.3d 757, 778-779, 615 N.E.2d 1047.
 {¶ 28} It is clear in this case that the trier of fact afforded little weight to the appellant's claims of rape and physical abuse. As this court has noted on numerous occasions, deference to a trial court on matters of credibility is particularly "crucial" in cases involving children because much that may be apparent in the parties' demeanor and attitude may not translate well into the record. In re Christian, Athens App. No. 04CA10, 2004-Ohio-3146, at ¶ 7. See Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159.
 {¶ 29} For these reasons, we find no merit in appellant's contentions that the trial court erred in reallocating parental rights to the appellee. Having determined that the trial court neither erred in assuming jurisdiction over this case, nor in naming the appellee as the legal custodian of the minor children, we find no merit in the appellant's third assignment of error and it is hereby overruled.
 II {¶ 30} We now turn to the appellant's second assignment of error directed at her child support obligation calculation. The magistrate concluded that the appellant was employed as a part-time cosmetologist and earned approximately $7,075.12 per annum. With no evidence presented to explain why the appellant could not work full-time, the magistrate concluded that the appellant is "voluntarily underemployed" and, if employed fulltime making $6 an hour, would earn approximately $12,480 a year. The magistrate thus recommended that calculation of appellant's support obligation be based on that imputed income and arrived at a $284.69 monthly obligation.
 {¶ 31} Appellant objected, and argued that this determination was "unlawful, arbitrary, and against the manifest weight of the evidence." She asserted, in particular, that her hearing testimony explained why her income was reduced during summer (because Ohio University students are gone, thus less customers for haircuts) and that her income in New Mexico was "affected adversely by scheduled court hearings in Ohio." The court overruled her objections and adopted the magistrate's recommendation that she pay $284.69 in support. Appellant argues that this constitutes reversible error. We disagree.
 {¶ 32} Appellant's first argument is that the trial court erred in not considering those factors set out in R.C. 3109.01(C)(11)(a) for imputing income. Before we address those factors, however, we point out that the trial court proceedings were not to determine child support per se, but to consider the appellant's objections to factual finding number fourteen in the magistrate's report that determined that income should be imputed to appellant. We note that Civ.R. 53(E)(3)(d) provides that a party shall not assign as error on appeal a trial court's adoption of a finding of fact or conclusion of law unless an objection has been raised and filed. Moreover, such an objection must be specific and state with particularity the objection's grounds. Id. at (E)(3)(b). Although the appellant did in fact file objections to the magistrate's report on this particular issue, it does not appear to us that she raised the issue that the magistrate failed to consider R.C. 3119.01(C)(11)(a). Thus, the issue has been waived.
 {¶ 33} Even assuming that the issue had not been waived, we find no merit in her argument. The R.C. 3119.01(C)(11)(a) factors for imputing income are:
"(i) The parent's prior employment experience;
(ii) The parent's education;
(iii) The parent's physical and mental disabilities, if any;
(iv) The availability of employment in the geographic area in which the parent resides;
(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
(vi) The parent's special skills and training;
(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
(viii) The age and special needs of the child for whom child support is being calculated under this section;
(ix) The parent's increased earning capacity because of experience;
(x) Any other relevant factor."
 {¶ 34} It is clear from her report that the magistrate did, in fact, consider several of these factors. The magistrate expressly noted that (1) the appellant is a high school graduate and a licensed cosmetologist; (2) no evidence demonstrates that the appellant could not engage in full time employment (i.e., she was not disabled or otherwise prevented from being employed); (3) the appellant had the ability to earn the imputed income because the $6 per hour figure was reflected on one of her pay stubs. All things considered, we are satisfied that the trial court considered the appropriate statutory factors.
 {¶ 35} Appellant also argues that both the magistrate and the trial court erred in not considering that her income was reduced by the absence of students at Ohio University during the summer. This is an unusual assertion in view of the fact that the appellant is now in New Mexico and her income is no longer affected by the fluctuating Ohio University student population. We also find little value with her claim that she was underemployed in New Mexico due to the demands of coming to Ohio for court hearings. We find nothing in the record to substantiate her contention that the trial court proceedings were so burdensome as to inhibit her from finding employment.
 {¶ 36} Appellant also argues that the trial court cannot simply devise an imputed income figure based on hypothetical employment in a different location. She cites Dillon v. Dillon (Sep. 17, 1997), Athens App. No. 97CA03, wherein we reversed an imputed income calculation based on what a child support obligor could earn in a distant city rather than what he could earn in his present locality. The facts in the Dillon case, however, are much different from the facts in the instant case. InDillon, the obligor earned $11,664 per year. The trial court concluded that he was underemployed because he could have earned more in an urban area. The court then imputed an income of $39,000 — more than three times what the obligor was earning locally. We held that it is error to take income levels from urban areas and then attempt to equate them to Athens County levels.
 {¶ 37} In this case, the magistrate took the $6 per hour wage directly from the appellant's pay stub and concluded that she should be able to earn the same amount of money in New Mexico. Under the facts of this case, we believe that no prejudicial error exists. First, the magistrate did not arrive at an imputed income that was in excess (for example, more than triple) of the appellant's income in Athens. Instead, the magistrate used the same hourly wage. Second, the magistrate took this income figure from a rural area where incomes are generally lower. If the appellant chooses to live in a rural area of New Mexico, she should enjoy roughly the same earning potential. If she lives in a more urban area, she may have a higher income potential. If it turns out incomes are substantially less in New Mexico, she may seek a redetermination of her support obligation.
 {¶ 38} In the final analysis, the question of whether a parent is voluntarily underemployed and whether income should be imputed to that parent is a question for the trial court and should not be disturbed on appeal absent an abuse of discretion. Rock v. Cabral (1993),67 Ohio St.3d 108, 112, 616 N.E.2d 218; also see Kerbyson v. Kerbyson,
Washington App. No. 03CA56, 2004-Ohio-3607, at ¶ 27. After our review in this case, we find no abuse of discretion. The trial court based its imputation of income on an hourly wage that the appellant earned as a cosmetologist in Athens County. Moreover, the imputed pay rate was $6 per hour. We note that the current minimum wage is $5.15 per hour (see website for the United States Department of Labor).[8] The magistrate's figure is only 85 cents per hour greater than the minimum wage.
 {¶ 39} All things considered, we find nothing arbitrary, unreasonable or unconscionable in the magistrate's report or the trial court's decision to adopt that report. The second assignment of error is hereby overruled.
 III {¶ 40} We now return to the appellant's first assignment of error in which she objects to the trial court's "retroactive modification" of the appellee's New Mexico child support obligation. The magistrate found that, after appellant moved to Athens in August, 2000, the appellee's payment of living expenses for her and for the children constituted an in-kind contribution that satisfied his New Mexico support obligation. The magistrate thus recommended that the appellee's support obligation be deemed satisfied by such in-kind contributions and that a copy of the final entry to that effect be forwarded to the New Mexico court.
 {¶ 41} Appellant's objections to the magistrate's decision argued, inter alia, that the court had no legal authority to retroactively modify the child support or "dictate retroactive modification to the State of New Mexico." Appellant further claimed that if her ex-husband received credit for inkind contributions, then she, too, should receive credit for the time that they lived together and she provided child care.
 {¶ 42} The trial court was not persuaded and noted this is not a retroactive modification; rather it is simply a fulfillment of that obligation through in-kind contributions. The court thereafter noted that an entry would be forwarded to New Mexico to alert that court that the appellee would be given credit on his child support obligation for in-kind support provided after June of 2000. Appellant argues that this constitutes error. Although the appellant characterizes this action as a "retroactive modification," we do not believe that this is what happened here. The trial court has not disturbed the New Mexico child support order. Instead, the court determined that the New Mexico order has been satisfied through in-kind contributions.[9]
 {¶ 43} A trial court's decision to credit in-kind contributions for child support is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. See, generally, Nixon v.Nixon, Ashland App. No. 04COA017, 2004-Ohio-4766, at ¶¶ 8-17. In the instant case the appellee testified that between summer of 2000 and August of 2002, he was the primary source of support "by far" for the children. He paid all of the bills and bought "all of the childrens' food." The magistrate and trial court found this testimony credible and, consequently, credited him with in-kind support. We find nothing arbitrary, unreasonable or unconscionable in that decision.
 {¶ 44} Our conclusion is buttressed by the equities of this situation. The gist of the evidence is that the appellee supported his ex-wife and their children for the entire time they resided in Ohio. Assuming this evidence was credible, the appellant was relieved of all financial burden in supporting herself and their children. To order appellee to pay her support for those years would not only be inequitable to him, but a considerable windfall to her.
 {¶ 45} As for appellant's contention that she should have been given an in-kind credit on her child support obligation for child care that she provided, we find no indication in the record that she requested any. There was also no evidence to reveal how much of the household resources, if any, were preserved by eliminating the need for child care providers. Furthermore, the appellee testified that his mother helps to provide child care, thus making this issue even more problematic to determine.
 {¶ 46} In any event, for these reasons we find no merit in the appellant's first assignment of error and it is hereby overruled.
 {¶ 47} Having reviewed all error assigned and argued in the briefs, and after finding merit in none of them, the judgment of the trial court is hereby affirmed.
Judgment Affirmed.
 Judgment Entry
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J., Harsha, J. Abele, J.: Concur in Judgment Opinion For the Court.
[1] While their "live-in" relationship was apparently intended to be strictly platonic, the appellee executed an agreement that promised the appellant that he would make no "unwanted physical/sexual advances" toward his ex-wife. However, in the event that the parties had another child together, the appellant would support that child until the age of twenty-one.
[2] The record is unclear whether appellee had assistance from New Mexico law enforcement. He testified at the hearing that he had a "Sheriff's orders and papers from the government."
[3] During her testimony, the appellant admitted that she did not seek out local resources for help with the alleged rape or abuse and that she did not file charges with the local authorities.
[4] Appellant admitted that she consumed alcohol, but did so to cope with the rapes and physical abuse that she suffered.
[5] We note that The Plains, Ohio is located in Athens County and is merely 5 miles from the city of Athens.
[6] We acknowledge that the magistrate's July 14, 2003 decision references a "hearing" that it requested on the issue of child support in New Mexico and that a hearing was to have been held on June 18, 2003. There does not appear to be any further mention of that hearing in the record. That said, we note that this hearing was requested by the trial court and indicates that they had been in contact with the New Mexico Court to one degree or another.
[7] That statute provides, inter alia, as follows:
"(E) (1) (a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
[8] United States Department of Labor: Employment Standards Administration, Wage and Hour Division. http://www.dol.gov/esa/ whd/flsa.
[9] We agree with the appellant, as an abstract proposition of law, that the New Mexico court retains whatever jurisdiction is necessary to enforce its child support order up to the time that the Ohio trial court assumed jurisdiction and designated the appellee as the residential parent. It is theoretically possible that the New Mexico court could reject the trial court's finding that the support order has been satisfied though in-kind contributions. We, however, need not and do not address the ramifications of that hypothetical scenario as the issue is not before us at this time.