[Cite as *Hurricane Dev., L.L.C. v. Fourtounis*, 2017-Ohio-927.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104196**

# HURRICANE DEVELOPMENT, L.L.C.

PLAINTIFF-APPELLEE

vs.

# EUGENIA M. FOURTOUNIS, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-818722

**BEFORE:** Kilbane, J., Keough, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 16, 2017

**ATTORNEYS FOR APPELLANT**

David S. Anthony
Joseph Grandinetti
Anthony & Zomoida L.L.C.
1000 W. Wallings Road
Suite A
Broadview Heights, Ohio 44147


**ATTORNEYS FOR APPELLEE**

John M. Manos
John M. Manos Co., L.P.A.
739 East 140th Street
Cleveland, Ohio 44110

Melany A. Fontanazza
Kimberly Y. Smith Rivera
McGlinchey Stafford, P.L.L.C.
25550 Chagrin Boulevard
Suite 406
Cleveland, Ohio 44122

Hunter G. Cavell
Crosscountry Mortgage, Inc.
6850 Miller Road
Brecksville, Ohio 44141

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant, Eugenia Fourtounis ("Eugenia"), appeals from the trial court's judgment sustaining plaintiff-appellee's, Hurricane Development, L.L.C. ("Hurricane"), objections to the magistrate's decision and granting quiet title of the subject property to Hurricane. For the reasons set forth below, we reverse and remand for a new trial.

**{¶2}** At issue in the instant case is whether Eugenia executed a deed in favor of Hurricane that transferred her interest in the subject property located at 2693 W. 14th Street in Cleveland, Ohio. Hurricane contends that Eugenia did transfer her interest by executing a deed, which prompted Hurricane to file a complaint for quiet title, slander of title, and unjust enrichment against Eugenia in December 2013.[1]

**{¶3}** Hurricane is an Ohio limited liability company owned by Nikolas and Marika Fourtounis (Eugenia's former in-laws). Hurricane was created to operate the rental properties Nikolas and Marika own on W. 14th Street. Over the course of 30 years, Nikolas and Marika purchased a total of three parcels of property on W. 14th Street. The rental property at issue was purchased by Hurricane in May 2001. Nikolas and Marika used attorney Tom Karris ("Karris") to assist with their legal affairs and real estate transfers.

---

[1]Hurricane also filed its complaint against IndyMac Bank, F.S.B., which had a mortgage on the property and was an interested party in the action.

{¶4}  Nikolas and Marika's son, Mark Fourtounis ("Mark"), married Eugenia in March 1999, and they divorced in February 2012.[2]  Mark helped his parents with the rental properties when they needed a loan to make improvements to the properties.  In December 2004, Hurricane quit-claimed the subject property to Mark personally.  Mark had applied for a loan on the property, but was initially denied because he was married to Eugenia at the time.  As a result, Mark transferred the property to both himself and Eugenia on February 2, 2005, and they jointly applied and received a loan from IndyMac Bank in the amount of $159,500.

{¶5}  Hurricane claims that Mark and Eugenia executed a quitclaim deed conveying the subject property to it in June 2005.  Since then, Hurricane contends that it has paid the property tax bill for the subject property.  In August 2013, Hurricane attempted to obtain financing using the subject property as collateral, but discovered that the Cuyahoga County Recorder's Office had not recorded the June 2005 quitclaim deed.  Hurricane's unsuccessful attempts to have Eugenia transfer her interest in the subject property prompted Hurricane to file a lawsuit against Eugenia.

{¶6}  In its complaint, Hurricane alleges the following three causes of action: quiet title, unjust enrichment, and slander of title.  Hurricane moved for summary judgment in December 2015, which was denied by the court.  In April 2016, Hurricane moved and the trial court granted Hurricane's motion to dismiss its slander of title cause

---

[2]Eugenia is now known as Eugenia Aspiotis.

of action. A trial on the remaining causes of action was held before a magistrate on April 29, 2015. The following pertinent evidence was adduced at trial.

{¶7} Eugenia testified that when they were married, Mark told her that they were the owners of Hurricane, which was their rental property business for properties on W. 14th Street. She and Mark would take out loans to repair the properties. She also testified that Nikolas would bring them monthly rent payments from the properties. She further testified that Mark would bring her documents all the time to sign, and she would sign them because he was her husband, he handled the business, and she trusted him.

{¶8} With respect to the subject property, Eugenia denies that she ever signed a deed transferring the subject property to Hurricane. She remembers signing the deed transferring the subject property into her and Mark's name and the loan documents for the subject property at home, and not at Karris's office, because in their culture it was custom for the mother to stay home for 40 days after a baby was born, and their daughter was born on January 12, 2005, which was less than 40 days from February 2, 2005. Eugenia further testified that the witness whose signature was on the documents, Elizabeth Feliciano ("Feliciano"), was not present when she signed the loan documents, nor was she present for any other document she signed. Feliciano was Karris's employee. Karris was not present either to notarize the signatures even though he notarized her signature. She stated that she had been to Karris's office on only one occasion, which related to a will for Mark's parents.

{¶9} Eugenia further testified that Mark prepared all of their tax returns as well as the tax returns for Hurricane while they were married, and Eugenia never spoke to any accountant or participated in the preparation of any of the tax returns. Eugenia does not have any knowledge of what Mark prepared for their taxes relating to the subject property because Mark solely handled these matters.

{¶10} Mark stated that Eugenia signed the loan paperwork for the subject property at Karris's office. He testified that the IndyMac loan officer, Karris, and Feliciano were all present at closing. Mark testified that Eugenia did sign the deed transferring the subject property back to Hurricane, and he believed it was in Karris's possession. Mark routinely transferred property between himself and Hurricane so that he could obtain loans in his and Eugenia's names and use the proceeds on behalf of Hurricane.

{¶11} In June 2010, Mark and Eugenia filed for bankruptcy. The petition did not list the subject property as an asset belonging to Mark and Eugenia. Mark handled all of the paperwork, and Eugenia did not know that this property was titled in her name at the time of the bankruptcy. Additionally, their divorce proceedings were concluded without a determination as to who owned the property. Eugenia testified that she did not get ownership interest in any of the W. 14th Street properties in the divorce because she had no papers or anything in her name.

{¶12} Karris testified that all loan documents and deeds were signed and notarized in his office. Karris was disciplined by the Ohio Supreme Court in 2011 for notarizing signatures of persons who did not sign deeds and other documents in front of him during

this same period of time, and the Ohio Supreme Court suspended his law license for six months. According to Karris, his procedure for filing deeds differed based upon whether the person for whom the deed was prepared was a client of his title company or a client of his law practice because he owned both a law practice and a title agency.

{¶13} If a deed was recorded for the title company clients, Karris would have an examiner personally take the documents to the county auditor and walk them through for filing. If the deed was prepared for a client of his law practice, in most instances the deed would be mailed to the county auditor with instructions to forward the deed to the recorder for recording. He would also request that the recorded document be returned by mail to Karris. It was his custom and practice to make copies of all the deeds he sent to the auditor. It was further his custom and practice to keep a copy of the original deed when it was returned from the auditor. With respect to the subject property, Karris testified that he did not have a recorded or unrecorded copy of the deed transferring interest to Hurricane. It was further Karris's custom and practice to write a check for the deed recording fee. No evidence was produced at trial, however, demonstrating that the filing fee was ever paid or tendered. Karris discovered that there was no copy of the deed in his file, and no deed was ever recorded for the subject property after Mark and Eugenia's divorce was finalized.

{¶14} When Karris attempted to locate the deed, he was told by someone at the recorder's office that "it was not there." The recorder did not have a copy of any deed

transferring ownership of the property from Mark and Eugenia to Hurricane in its records.

{¶15} Karris stated that the conveyance exemption for the subject property lists Mark and Eugenia as the grantor and Hurricane as the grantee. The form was not signed by Eugenia and there is nothing in the record indicating that Eugenia was ever aware of its filing by Karris's office. Rather, it was signed by Feliciano.

{¶16} Richard O'Rourke ("O'Rourke"), the accountant for Hurricane and Mark, testified that there was nothing on Mark and Eugenia's tax returns indicating that they ever owned any rental properties, despite there being a deed of such property in both their names. Instead, the property at issue was reported along with three others as owned by Hurricane with a collective loss reported on Nikolas and Markita's tax returns for 2010-2013. This was done on the basis of spreadsheets provided by Hurricane. O'Rourke never reviewed a deed showing that Hurricane actually owned the property. Furthermore, O'Rourke did not receive any information from Eugenia and has never even communicated with Eugenia.

{¶17} Patty Corrigan ("Corrigan"), the bookkeeper for Hurricane, testified that expenses were divided among four properties in Hurricane's books, including the subject property. Corrigan admitted that she never discussed any expenses with Eugenia. Corrigan was not involved with the execution or filing of any deed relating to the subject property.

**{¶18}** After the conclusion of trial, the magistrate issued a decision, finding in favor of Eugenia on both counts of Hurricane's complaint. The magistrate stated:

> [Hurricane] did not [meet] its burden of proving title solely in itself. * * * At trial, [Mark] testified that [Eugenia] signed the deed and [Eugenia] testified that she did not sign the deed. The Magistrate finds credible the testimony of [Eugenia] and concludes that she did not sign a deed conveying her one-half interest in the subject property to [Hurricane].
>
> Additionally, the Magistrate finds the testimony of [Karris] to be unreliable due to his lack of memory of the circumstances surrounding the mailing of the deed. Moreover, the Magistrate overruled the objection of [Hurricane] made at trial and finds [Karris's] testimony as to the execution of the deed to be unreliable due to his disciplinary suspension by the Ohio Supreme Court for improperly notarizing documents. Equally unpersuasive is the [Hurricane's] inference that a deed was properly executed and delivered by [Eugenia] because the Cuyahoga County Auditor changed the tax information in its records. The only *fact* proved by the change in the tax information is that the Auditor changed the tax information in its records; no other inferences can be drawn from this alone.

(Emphasis sic.)

**{¶19}** Hurricane filed objections to the magistrate's decision and Eugenia opposed. The trial court sustained Hurricane's objections and rendered judgment in Hurricane's favor on both causes of actions. In its written opinion, the trial court found that:

> [Hurricane] met its burden of proving title solely in itself. * * * At trial [Mark] testified that [Eugenia] signed the deed, and [Eugenia] testified (regarding documents) that she would have signed wherever he told her to sign. The court finds credible the testimony of [Mark] and [Karris], and thereby concludes that [Eugenia] did sign a deed conveying her one-half interest in the subject property to [Hurricane] in June 2005. In addition, the court finds persuasive [Hurricane's] claim that a deed was properly executed and delivered by [Eugenia] because the Cuyahoga County Auditor changed the tax information in its records.
>
> As [Hurricane] has met is burden by proving a deed was executed and delivered by [Eugenia] to [Hurricane] conveying her one-half interest in the

subject property, * * * [t]itle is hereby Quieted in the name of [Hurricane], free and clear of any and all adverse interest of [Eugenia.]

{¶20} It is from this order, Eugenia appeals, raising the following three assignments of error for review.

### Assignment of Error One

The trial court abused its discretion in rejecting the magistrate's decision based solely on a redetermination of credibility of the witnesses, without any basis to do so, when the magistrate was the one who had an opportunity to view the witness and observe their demeanor, gestures and voice inflections, and was in the best position to weigh the credibility of said witnesses.

### Assignment of Error Two

The trial court erred in finding that a properly executed deed existed, which was delivered by Eugenia, when such a finding was against the weight of the evidence.

### Assignment of Error Three

The trial court erred in awarding judgment in favor of [Hurricane] when [Hurricane] failed to meet its burden of proof as to quiet title.

{¶21} In the first assignment of error, Eugenia contends the trial court improperly reassessed the credibility of the witnesses contrary to the magistrate's findings. In the second assignment of error, Eugenia contends the trial court improperly found that a deed existed.

{¶22} Civ.R. 53 governs the rules pertaining to the actions of the court on a magistrate's decision. It provides in relevant part:

Action on objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the

objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.

*Id.* at (D)(4)(d). Therefore, the trial court must conduct a de novo review of the magistrate's decision. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 9, citing *Inman v. Inman*, 101 Ohio App.3d 115, 655 N.E.2d 199 (2d Dist.1995).

{¶23} When examining the trial court's ruling on objections to a magistrate's decision, appellate courts review the trial court's determination under an abuse of discretion standard. *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16, citing *Remner v. Peshek*, 7th Dist. Mahoning No. 97-C.A.-98, 1999 Ohio App. LEXIS 4802 (Sept. 30, 1999). "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶24} In the instant case, the magistrate found that Eugenia did not sign a deed transferring her interest in the subject property. The magistrate found Eugenia's testimony more credible than Mark's testimony. Additionally, the magistrate found that Karris's testimony lacked credibility because of his lack of memory of the circumstances surrounding the mailing of the deed and disciplinary suspension by the Ohio Supreme Court for improperly notarizing documents. The magistrate found that no inferences could be drawn from the fact that the Cuyahoga County Auditor changed the tax information in its records.

**{¶25}** The trial court overruled the magistrate's decision and sustained Hurricane's objections. The court found credible Mark's testimony that Eugenia transferred the subject property to Hurricane. It further found that "Karris specifically recalled preparing the deed transferring the subject property from Mark and [Eugenia] to [Hurricane]." The court concluded that

> [it] finds credible the testimony of [Mark] and [Karris], and thereby concludes that [Eugenia] did sign a deed conveying her one-half interest in the subject property to [Hurricane] in June 2005. In addition, the court finds persuasive [Hurricane's] claims that a deed was properly executed and delivered by [Eugenia] because the Cuyahoga County Auditor changed the tax information in its records.

**{¶26}** In sustaining Hurricane's objections, the trial court decided, contrary to the magistrate, that Mark's and Karris's testimonies were more credible than Eugenia's testimony.

**{¶27}** Typically, the lower court is better able than this court to "view the witnesses and observe the gestures, demeanor, and voice inflections and to use those observations to weigh credibility of their testimony." *Rodriguez v. Frietze*, 4th Dist. Athens No. 04CA14, 2004-Ohio-7121, ¶ 27, citing *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). In the instant case, the trial court was limited to reviewing witness testimony without the advantage of physically viewing the witness in order to determine credibility. Therefore, the trial court could rely on the magistrate's determinations regarding credibility when reviewing the magistrate's decision. *Rodriguez* at ¶ 27, citing *Holm v. Smilowitz*, 83 Ohio App.3d 757, 615 N.E.2d 1047 (4th Dist.1992). We are mindful, however, that because the trial court is the

ultimate trier of fact, it may reject credibility determinations made by a magistrate and modify the magistrate's decision in entering judgment. *State ex rel. Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632.

{¶28} In order to find transfer of ownership, Hurricane was required to establish, in addition to the statutory requirements of R.C. 5301.01, that a deed existed, the deed was delivered to Hurricane, and that Eugenia had the intent to convey title. *Welsh v. Estate of Calvin*, 10th Dist. Franklin No. 02AP-1328, 2004-Ohio-62. Hurricane's argument is premised upon the allegation that Eugenia executed a deed conveying her interest in the subject property to Hurricane that was mailed to the Cuyahoga County Auditor in June 2005. Hurricane alleges that this deed was lost between the County Auditor's Office and the County Recorder's Office.

{¶29} While the trial court may reject the credibility determinations made by the magistrate, the record in the instant case is clear in that no one has a recorded or unrecorded copy of the deed transferring Eugenia's interest in the subject property to Hurricane. In fact, Karris testified that when he went to find the deed in the recorder's office, "it was not there." The recorder did not have a copy of any deed transferring ownership of the property from Mark and Eugenia to Hurricane in its records. Additionally, Karris did not have a copy of the signed deed or the deed after it was recorded, even though it was his custom and practice to keep copies in his file.

{¶30} The magistrate found that a deed transferring Eugenia's interest in the subject property did not exist. Whereas, the trial court found that a deed did exist. The

court found that Karris specifically recalled preparing the deed and transferring the subject property from Mark and Eugenia to Hurricane. While Karris testified that he prepared the deed, he did not testify as to any specifics of the deed and did not have a copy of the deed in his file. He did not remember the circumstances surrounding the mailing of the deed. Furthermore, the magistrate found it compelling that Karris was disciplined by the Ohio Supreme Court in 2011 for notarizing signatures of persons who did not sign deeds and other documents in front of him during this same period of time, and the Ohio Supreme Court suspended his law license for six months. Eugenia testified that Karris was not present to notarize the signatures for the IndyMac loan, even though he notarized her signature on the document. She testified that she had been to Karris's office on only one occasion, which related to a will for Mark's parents. Furthermore, Eugenia testified that Feliciano was not present as a witness when Eugenia signed the loan documents or any other document she signed for Mark.

{¶31} The court also found convincing that the conveyance exemption form for the subject property indicates that an executed deed was received by the auditor. The record reveals that this statement was only signed by Feliciano, who did not testify at trial. Eugenia and Mark were not required to sign this form.

{¶32} Moreover, Eugenia testified that she never signed any deed transferring her interest in the subject property to Hurricane. While Eugenia testified that she did not own any properties on W. 14th Street because nothing was in her name, Eugenia's testimony was in the context of who owned the properties on W. 14th Street at the time

she married Mark, to which she replied Mark owned them. Mark later transferred the title of the subject property to both his and Eugenia's names so that they could obtain financing. Eugenia did not become aware that the property was in her name until the divorce because she did not have any such papers in her name or possession. Mark would regularly bring documents for Eugenia to sign. Eugenia would sign documents whenever Mark told her to because she thought she was transferring the property to her and her husband's business and she trusted Mark because he was her husband.

{¶33} We note that the determination of the weight of the evidence and the credibility of witnesses is for the trier of fact. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the trier of fact that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. When a court of appeals determines that a verdict is against the weight of the evidence, it should remand the case for a new trial. *Id.* at ¶ 22, citing *Hanna v. Wagner*, 39 Ohio St.2d 64, 66, 313 _N.E.2d 842 (1974).

**{¶34}** In the instant case, while the trial court has the authority to reject the magistrate's decision, we find that the trial court abused its discretion in doing so. Based on the foregoing evidence and the long-standing proposition that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible, we find that the trial court's judgment in favor of Hurricane is against the manifest weight of the evidence because the facts and evidence do not support the trial court's findings. Thus, we reverse the trial court's judgment and remand for a new trial before the trial court.

**{¶35}** Accordingly, the first and second assignments of error are sustained.

**{¶36}** In the third assignment of error, Eugenia contends the trial court improperly found that Hurricane met its burden of proof as to quiet title. However, in light of our disposition of the first assignment of error, we find this assigned error moot. App.R. 12.

**{¶37}** Judgment is reversed. The matter is remanded for a new trial before the trial court.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR