[Cite as *Hynd v. Roesch*, 2017-Ohio-7448.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| CARRIE M. HYND, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-A-0065** |
| LEVI M. ROESCH, | : | |
| Defendant-Appellee. | : | |

Appeal from the Ashtabula County Court of Common Pleas, Domestic Relations Division, Case No. 2013 DR 00055.

Judgment: Affirmed in part, reversed in part, and remanded.

*Hans C. Kuenzi,* Hans C. Kuenzi Co., L.P.A., Skylight Office Tower, 1660 West Second Street, Suite 660, Cleveland, OH 44113 (For Plaintiff-Appellant).

*William P. Bobulsky,* William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Carrie M. Hynd ("mother"), appeals from the judgment of the Ashtabula County Court of Common Pleas, Domestic Relations Division, denying her motion to modify parenting time rights with appellee, Levi M. Roesch ("father"), and granting father's motion to modify parental rights and responsibilities. The trial court's judgment is affirmed in part, reversed in part, and remanded.

{¶2}    The parties were married on August 2, 2012 and one child was born as issue of their marriage, J.R.   On September 24, 2014, the parties were divorced. Mother was designated the residential parent and legal custodian of J.R.   Father was awarded parenting time in accordance with the standard companionship order of the trial court.

{¶3}    On December 2, 2014, mother filed an ex parte petition for domestic violence civil protection order; mother additionally filed an emergency motion to modify and suspend parenting time.   The ex parte petition was premised upon mother's allegations that father abused J.R. due to bruising observed on the child's buttocks after he returned from visitation with father.   By consent entry, father agreed to have parenting time with J.R. at "Rooms to Grow," a supervisory setting.

{¶4}    Father subsequently filed, inter alia, a motion to cancel the ex parte civil protection order and a memorandum in response to mother's emergency motion to modify and suspend parenting time.   These matters were heard on April 29, 2015.   At the hearing, testimony established that J.R. had received a spanking during the visitation for disciplinary reasons.   On June 12, 2015, the court denied mother's emergency motion to modify and granted father's motion to cancel the ex parte order. During the period between the mother's filings and the June judgment, father's parenting time was severely restricted.

{¶5}    On October 2, 2015, Mother filed a second petition for domestic violence civil protection order based upon an arm injury J.R. sustained during a visit with father. Mother noticed the child was favoring his right arm. When questioned about the injury, father stated, prior to dropping J.R. off with mother, he took the boy to a park where the

child fell after exiting a merry-go-round. He stated the child cried for approximately 30 seconds, but then appeared fine. Dubious of father's explanation, mother took J.R. to the Cleveland Clinic where she stated her concern that the boy was being abused. She informed medical staff that the child had a history of bruises on his back and buttocks which led to a previous protection order being granted. The medical history did not disclose, however, that the order had been dismissed because of insufficient evidence. Medical personnel was concerned and admitted J.R. to evaluate the child to determine whether the injury was a result of abuse. After being x-rayed, physicians concluded the boy suffered from an elbow joint effusion, i.e., swelling within the joint. Physicians ultimately concluded the boy suffered no "non-accidental trauma" and there was no evidence of a fracture. Notwithstanding this finding, mother continued to maintain, even during the hearing in the underlying matter, that J.R.'s arm was broken during the incident.

{¶6} After a hearing on October 13, 2015, the magistrate determined mother failed to establish father committed any act that would have resulted in the child being an "abused child." The magistrate found the playground injury was accidental and the child displayed no behavior that would suggest he required medical treatment. The magistrate accordingly recommended mother's petition be denied and the ex parte order be vacated. Mother filed no objections to the magistrate's decision. The trial court subsequently adopted the decision. That judgment was appealed and in *Hynd v. Roesche*, 11th Dist. Ashtabula No. 2015-A-0063, 2016-Ohio-7143, this court affirmed the trial court's judgment.

3

**{¶7}** On November 6, 2015, mother filed the underlying motion to modify parenting time rights and, on July 26 and 27, 2016, the court held a hearing on that motion and father's February 9, 2015 motion to modify parental rights and responsibilities. The trial court heard testimony primarily from mother and father and considered the forensic psychological report prepared and submitted by Farshid Afsarifard, Ph.D.

**{¶8}** In addition to the evidence already discussed, the court also heard testimony that, prior to the filing of the second petition for civil protection order, mother began noticing J.R. was losing weight during his visits with father. In June 2015, she began a regiment of weighing the child before the visits and after the visits. She additionally began a practice of taking the boy to the pediatrician's office after visits with father, not to consult the physician, but for office personnel to weigh the child. This process continued into August 2015 and throughout that time, the boy's weight did not change dramatically; J.R. dropped between a pound and a pound and six ounces at most, but on at least one occasion the boy returned to mother heavier than before. Moreover, the evidence indicated that, regardless of the minimal weight loss mother noticed, J.R. was in a higher percentile for weight throughout this period; at his lowest, J.R. was in the 79th percentile and at his highest, the 92nd percentile.

**{¶9}** Furthermore, mother had changed J.R.'s medical provider at least three times after the parties' divorce and, according to father, mother failed to notify him each time she changed pediatricians. Mother also took the child to walk-in clinics where no appointments were necessary. Father testified these decisions made it difficult for him to obtain or even locate the child's medical records.

4

{¶10} Dr. Afsarifard's report detailed his assessment of the parties' relative personalities and their impressions of the other's parenting styles as well as the issues they had with each other. He gave the parties psychological evaluations and observed them interacting with J.R. Ultimately, he determined each parent interacted well with the child and the child was attached to them both. He expressed dismay, however, at the parties' obvious inability to communicate effectively and similar inability to make compromises for the well being and best interest of their son. He underscored the importance of the parties providing the child with consistency and mutual support. Given the parties' resentment toward one another, as well as their passive-aggressive way of relating with each other, the doctor was not optimistic that the parties would be able to achieve that goal on their own.

{¶11} Dr. Afsarifard ultimately recommended that the court develop a shared-parenting plan that gave father the authority to make medical decisions. He further recommended a visitation schedule that was not significantly different than the standard schedule already in place. Given the poor state of communication between the parties, he recommended they retain a "parent coordinator" to assist them in developing a "communication protocol." He further recommended the parties obtain individual counseling to address the issues surrounding the parties' relationship.

{¶12} After considering the evidence and the statutory factors, the trial court "substantially overruled" each party's motion. The trial court appointed a parenting coordinator and set forth that individual's powers and duties. The trial court modified parenting time pursuant to the Ashtabula County Court of Common Pleas Local Rule 19, which provided for equal division of available parenting time on a "2-2-5-5" day

rotation, to wit: mother receives child beginning on a Monday and Tuesday; father receives the child Wednesday and Thursday; then Mother had the child for the next successive five days, followed by father having the child over the next five-day period. Parenting time for holidays and other special occasions were also specifically allocated. Following the issuance of the order, mother appealed and assigns two errors for our review. Her first assignment of error provides:

{¶13} "The trial court erred in awarding appellee parenting time equivalent in duration to time during which appellant as custodial parent has possession of the minor child."

{¶14} An order of visitation issued by a trial court is also reviewed under an abuse of discretion standard. *Wren v. Tutolo,* 11th Dist. Geauga No.2012-G-3104, 2013-Ohio-995, ¶8. Accordingly, a judgment involving the allocation of parental rights and responsibilities will not be disturbed save an abuse of discretion. *Id.* The phrase "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul,* 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24. In determining whether the trial court has abused its discretion, a reviewing court is not to weigh the evidence, but, rather, must determine from the record whether there is some competent, credible evidence to sustain the findings of the trial court. *Clyborn v. Clyborn,* 93 Ohio App.3d 192, 196 (3d Dist.1994).

{¶15} Modifications to parenting time or visitation are governed by R.C. 3109.051(D). *See Braatz v. Braatz,* 85 Ohio St.3d 40, 44-45 (1999). The court must consider the specific factors set forth under the statute as well as any other factor in the child's best interest when modifying parenting time. *Id.* at 45.

6

{¶16} Mother first asserts the trial court erred when it made various findings pursuant to R.C. 3109.051(D). Mother maintains that the trial court erred in finding father has flexibility in his job that permits him to be available more than most fathers. Mother contends father manages an auto-body shop as well as a tree service with his parents. Both jobs are full-time positions which, in mother's view, requires father to work *more* than others. With this in mind, as well as the court's finding that mother is available "virtually any time for parenting," mother maintains the court's decision is unsupported by the evidence. We do not agree.

{¶17} During the hearing, evidence was adduced that, even though father worked at the garage and for a tree service, he nevertheless does enjoy flexibility because they are family businesses. Moreover, there was testimony that J.R. enjoyed spending time with his paternal grandparents. And the court found that it was in the child's best interest to spend time with his grandparents, who were available for babysitting if father was working. Even though mother is arguably more available for parenting than father, this fact does not undermine the court's findings.

{¶18} Next, Mother asserts the trial court's finding that she has used legal mechanisms to restrict father's visitation time is not supported by the record. Mother maintains that while she did seek domestic violence civil protection orders, she sought them in good faith, based upon her concerns for the child. Moreover, she asserts that even though her petitions were found to lack merit, this does not imply the actions prompting her filings were "innocent or without fault."

{¶19} The court found "[t]he plaintiff has used the court process to restrict the defendant's parenting time. She has not cooperated in allowing him any extended time

7

under the current parenting order, and is now asking the Court to reduce his available parenting time." The court's findings are supported by the record.

**{¶20}** In filing the ex parte domestic relations civil protection orders, mother's goal was to prevent father from seeing the child. While mother's concerns may have been prompted by her subjectively legitimate perceptions, this does not negate the fact that her actions significantly compromised father's ability to visit the child, despite father's otherwise reasonable explanations for J.R.'s injuries. And, in light of the court's denial of the petitions, as well as the hospital's determination that the child suffered "no non accidental trauma" when he injured his arm, one can conclude that the child's injuries were reasonably explained and, in effect, "innocent."

**{¶21}** Moreover, mother admitted she refused to allow father extended parenting time in the summer and would continue to do so until the child was in school. And, mother's motion before the court expressly sought to further limit father's visitation. Mother's arguments are without merit.

**{¶22}** Mother next asserts the trial court abused its discretion in modifying the previous visitation order because it relied upon Dr. Afsarifard's report in certain respects, but did not follow the doctor's recommendation for visitation. Dr. Afsarifard's recommendations were considered and, in some instances followed. The court, however, was not obligated to adopt each and every recommendation advanced in the doctor's report. The court determined equal parenting was in the best interest of the child and, given the circumstances of this case, it did not abuse its discretion in drawing this conclusion.

**{¶23}** Appellant's first assignment of error lacks merit.

**{¶24}** Appellant's second assignment of error provides:

**{¶25}** "The trial court erred in placing with appellee the authority and responsibility for medical decision making for the minor child."

**{¶26}** Mother contends the trial court erred when it conferred the responsibility for medical-care decision making on father because, as residential parent and legal custodian, she is entitled to make such decisions.

**{¶27}** The original decree, allocating parenting rights and responsibilities, did not set forth an express directive recognizing mother as the parent with the authority to make medical-care decisions for J.R. Because, however, the decree denoted mother residential parent and legal custodian, and the decree was not a shared-parenting order, we may reasonably infer she was the parent with that right and responsibility.

**{¶28}** Pursuant to R.C. 3109.04(E)(1)(a), a trial court cannot modify an existing allocation of parenting rights and responsibilities "unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." Also, "before a modification can be made pursuant to R.C. 3109.04(E)(1)(a), the trial court must make a threshold determination that a change in circumstances has occurred." *Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787, ¶9 citing *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, syllabus. The Ohio Supreme Court has held that the requisite change of circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997).

9

{¶29} In its judgment entry, the trial court concluded, without supportive analysis, that "[t]he authority and responsibility for medical decision making is placed with the defendant/father. He shall inform the plaintiff/mother of all appointments made for the child and assure that she has access to all the child's records." R.C. 3109.04(E)(1)(a) states that a court *may not* modify the parties' parental rights and responsibilities without finding a change of circumstance occurred. Although the judgment entry included adequate facts that would have supported the finding, the court failed to find a change of circumstance mandated by R.C. 3109.04(E)(1)(a). The conclusion reallocating the right and responsibility for medical decisions, therefore, was not supported by the necessary statutory findings.

{¶30} Given these points, we hold the trial court erred in modifying the parental rights and responsibilities as they pertain to the child's medical decisions without making the statutory findings set forth under R.C. 3109.04(E)(1)(a). Accordingly, the matter must be reversed and remanded for the trial court to consider this issue.

{¶31} Mother's second assignment of error has merit.

{¶32} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded.


TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.

10