[Cite as *S.S. v. T.M.*, 2025-Ohio-1827.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

S.S.,                                              :

       Plaintiff-Appellee/
       Cross-Appellant,                    :

                                  No. 114147

       v.                                       :

T.M.,                                              :

       Defendant-Appellant/
       Cross-Appellee.                     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 22, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-14-352342

---

### *Appearances:*

Law Firm of Joan Jacobs Thomas and Joan Jacobs Thomas, *for appellee/cross-appellant.*

Bartos & Company, LPA, David S. Bartos, and Timothy G. Spackman, *for appellant/cross-appellee.*

MARY J. BOYLE, P.J.:

{¶ 1} Appellant/cross-appellee T.M. ("Father") and appellee/cross-appellant S.S. ("Mother") appeal and cross-appeal the judgment issued by the

domestic relations court granting, in part, Mother's motion to modify their shared parenting plan and denying Father's motion to amend the shared parenting plan. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} This case involves the modification of the medical decision-making authority under the parties' Shared Parenting Plan ("SPP"). Mother and Father were divorced in 2015 and have one minor child, who was born in March 2013. Under the original SPP, the parties shared medical decision-making authority, and both parties could schedule and attend routine physical exams and optical and dental appointments for the child. The parties were to discuss nonemergency medical, dental, orthodontic, psychological, or optical expenditures before incurring the expense. If the parties did not agree on nonemergency treatment for the child, the parties were to accept the recommendation of the treating healthcare provider. Until December 2021, the parties followed SPP without involving the court.

{¶ 3} In early December 2021, Father filed a motion to show cause alleging that Mother failed to communicate with him regarding the child receiving the COVID-19 vaccination by waiting to notify him until Mother and child were nearly at the location, where the child ultimately received the vaccine. Thereafter, Mother filed a motion to modify parental rights seeking to be designated sole decision-maker for the child's healthcare. At Father's request, the parties were ordered to mediation in February 2022. In May 2022, the case was returned to the trial court's docket after an unsuccessful attempt at mediation.

**{¶ 4}** In November 2022, upon Mother's motion, the parties were referred to Family Evaluation Services for a brief focused assessment regarding whether one parent should be designated the sole medical decision-maker for the child. The evaluator recommended that Mother be the sole medical decision-maker. Thereafter, Father filed a motion to amend SPP in March 2023, seeking to retain the same plan with the additional provision that the health-care provider's recommendation would not control if it infringed on either parent's parental rights.

**{¶ 5}** The matter proceeded to trial before the magistrate in May 2023. Father proceeded pro se, while Mother was represented by counsel. Father and Mother were the only witnesses who testified, and each of them presented dozens of exhibits. The parties testified to numerous interactions between the two of them regarding their child and the testimony revealed that they would rarely agree on anything, specifically nonemergency medical decisions. As the magistrate noted:

> The decision to have the minor child receive the COVID-19 vaccine is the issue that brought to the forefront the difficulties the parties have with communication and making medical decisions for the minor child. Beyond communication issues the evidence presented during the trial showed that the parties take vastly different approaches to decision making at least as far as the child is concerned. It was apparent from the testimony and evidence that at times the joint decision making process between the parties does not take a few days but rather months. [Mother] testified that at times she will agree to go along with the decision that [Father] favors because he "is relentless." Further she testified that every medical decision is a battle.

> The minor child received both doses of the COVID-19 vaccine over the objection of [Father]. [Mother] was in favor of the minor child receiving the vaccine, [Father] was against the minor child receiving the vaccine. The parties had multiple conversations regarding the topic. Their discussions began in late August 2021 when the parties

had a telephone conversation wherein, they went over the PowerPoint presentation that [Father] prepared on the issue. They had email communication about the subject through October. Like many people on opposite sides of the pandemic/vaccine issue neither party was able to do or say anything that swayed the opinion of the other parent. [Father] testified that he did not think that they had a conversation because [Mother] did not care about his concerns, she only was providing her concerns. In his email to [Mother] on September 15, 2021 (Ex D) [Father] in his last bullet point offered some options to see if they could come to some middle ground with regard to the issue of the child being vaccinated. His suggestion included waiting until the safety trials on the vaccine concluded, having the child tested to see if he already had COVID-19 and has natural immunity, talk to experts on each side or take a closer look at each vaccine. When questioned about a middle ground, [Mother's] response was there was no middle ground, the child either received the vaccine or he did not receive the vaccine.

(Magistrate's Decision, Sept. 18, 2023.)

{¶ 6} At the conclusion of trial, all of Mother's exhibits were admitted without objection by Father. Dozens of Father's exhibits were admitted with specific limitations over Mother's objection. Fourteen of Father's exhibits were excluded. Finally, the report of Family Evaluation Services was admitted as a court's exhibit.

{¶ 7} On September 18, 2023, the magistrate issued a ten-page decision slightly modifying the SPP and finding that

it is in the best interest of the minor child that the Shared Parenting Plan be modified to allow [Mother] to make medical decisions for the minor child, but not to the exclusion of [Father]. The parties have Shared Parenting therefore all decisions as they relate to the child need to be discussed in advance of a decision being made. Therefore, the Magistrate finds that prior to any medical decision being made by [Mother] the parties need to discuss the issue/decision to see if they are in agreement. The discussion will include from both parties their reasons for and, their reasons against the decision in question. In the event they are not in agreement the parties together will discuss the options with the child's treating physician. *If after discussion with the treating physician, the parties are still unable to reach an agreement*

*on a medical issue then [Mother] will be able to make the final decision.* [Emphasis added to denote change.]

The Magistrate further finds that the parties will maintain the child's current pediatrician, dentist, and orthodontist, and other current medical providers unless they agree in writing to change a provider and their choice of new provider. In the event a current provider is no longer available due to change in insurance, the provider retires from practice, or the provider determines he/she no longer wishes the child to be a patient of the practice the parties should follow the following protocol to determine a new provider. If there is a need for a change in provider for one of the above stated reasons the parties will each investigate other providers and each provide three names of potential providers with the benefits they see for each professional to the other within 30 days of learning of the need for the change. In the event each parent includes the same provider on their list of three, that provider will be selected as the new provider of care. The providers must be included on any insurance the parties have for the child and accepting new patients. The parties will then each investigate the providers presented by the other parent. *If they are unable to agree on a provider 30 days after the names were exchanged [Father] will be permitted to choose the new provider from the list of names they considered.* [Emphasis added to denote change.]

*The Magistrate further finds that [Mother] is permitted to give her consent for the child to talk to the school counselor. [Father] shall support the child talking to the counselor. In the event the school counselor determines that the child needs additional counseling beyond the scope of the school counselor or during the summer when school is not in session [Mother] shall select the counselor taking into consideration insurance available and out of pocket costs for the counseling. [Father] shall be provided the same access as [Mother] to any counselor for the child.* [Emphasis added to denote additional term.]

(Magistrate's Decision, Sept. 18, 2023.)

{¶ 8} Both parties objected to the magistrate's decision, disagreeing with the magistrate's factual findings and conclusions. On June 20, 2024, the trial court

overruled both parties' objections and adopted, without modification, the

magistrate's decision in its entirety.[1] The trial court noted that

> both parties filed objections in narrative form, the specifics of the objections and facts in contention buried in the text, so many needles in the haystack for the Court to search out. Both parties expend much effort addressing dicta in the Magistrate's Decision. Both parties engage in ad hominem attacks on the other. . . .
>
> This case is a battle of parties' opinions on [the child's] medical care. No medical expert reports or testimony were offered. [Mother] and [Father] have different philosophies regarding medical care. They disagree on health care decision making.
>
> This case turns on the credibility and demeanor of the witnesses. Where a magistrate has conducted the trial, heard and seen the witnesses testify, "the trial court could rely on the magistrate's determinations regarding credibility when reviewing a magistrate's decision." (Citations omitted.) *Hurricane Dev., L.L.C. v. Fourtounis*, 2017-Ohio-927, ¶ 19 (8th Dist.).
>
> The Magistrate having heard and seen the witnesses determined that the best course was to modify the health care provisions of the SPP, adding more specific provisions. The Court agrees.

(J.E. June 20, 2024.)

{¶ 9} Father and Mother appealed. Father raises two assignments of error

for our review and Mother raises one.

> **Father's Assignment of Error I:** In an action to modify parental rights and responsibilities, the trial court committed reversible and prejudicial error and abused its discretion in modifying the existing shared parenting plan by designating Mother the final medical decision maker which was against the manifest weight of the evidence and not in the best interest of the minor child.

---

[1] By adopting the magistrate's decision without modification, the trial court inherently adopted the magistrate's findings. Accordingly, we will reference the magistrate's findings as if they are the trial court's findings.

**Father's Assignment of Error II:** The trial court's decision to modify parental rights and responsibilities and to designate Mother the final medical decision maker is in derogation of R.C. 3109.04(E)(1)(a) and thus was not supported by the required statutory findings and evidence and must be reversed.

**Mother's Assignment of Error:** The trial court erred as an abuse of discretion in specifically amending the shared parenting plan to include the following language, since it does not serve the best interest of the child [giving the Father any input in medical decisions provider[2]].

## II. Law and Analysis

### A. Standard of Review

{¶ 10} It is well-established that decisions of a trial court involving the care and custody of children are accorded great deference. *In re J.W.*, 2017-Ohio-8486, ¶ 19 (8th Dist.), citing *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Thus, a trial court's judgment allocating parental rights and responsibilities will not be disturbed absent an abuse of discretion. *Id.*, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). We also review a trial court's adoption of a magistrate's decision under an abuse-of-discretion standard of review. *Vannucci v. Schneider*, 2018-Ohio-1294, ¶ 21 (8th Dist.), citing *Abbey v. Peavy*, 2014-Ohio-3921, ¶ 13 (8th Dist.). "When applying an abuse of discretion standard, we cannot substitute our judgment for that of the trial court." *Id.* at ¶ 22. An abuse of discretion occurs if a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

---

[2] Mother quotes the entire journal entry as part of her assignment of error. We summarized her argument for a more coherent assignment of error.

{¶ 11} Nevertheless, an appellate court reviews the trial court's factual findings under a manifest-weight-of-the-evidence standard. *In re N.J.V.*, 2019-Ohio-2234, ¶ 19-20 (8th Dist.), citing *Wallace v. Wallace*, 2011-Ohio-4487, ¶ 10 (9th Dist.). In *In re Z.C.*, 2023-Ohio-4703, the Ohio Supreme Court reexplained the manifest-weight-of-the-evidence standard as follows:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

## B. Modification of a Shared Parenting Plan

### 1. Modification of a Term

{¶ 12} For ease of discussion, we will address Father's second assignment of error first, wherein Father asserts that the trial court failed to find that "a change of circumstance" occurred before modifying the SPP, which Father contends is

required under R.C. 3109.04(E)(1)(a) citing *Hynd v. Roesch*, 2017-Ohio-7448 (11th Dist.), in support. Father's argument, however, is misplaced.

{¶ 13} R.C. 3109.04(E) governs the modification of a shared-parenting decree or plan. R.C. 3109.04(E)(1) governs the requirements for the modification of "a prior decree allocating parental rights and responsibilities." Such a modification requires a finding that (1) there has been a change in circumstances of the child, residential parent, or either parent, (2) the modification is in the child's best interest, and (3) the benefits resulting from the change will outweigh any harm. Whereas division (E)(2) allows the modification of the *terms* of shared-parenting plan. For the court to modify under this section, it must find that the modification is in the best interest of the child. R.C. 3109.04(E)(2).

{¶ 14} The Supreme Court of Ohio discussed the different standards in *Fisher v. Hasenjager*, 2007-Ohio-5589. In *Fisher*, the Court explained that "[a]n order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian." *Id.* at ¶ 29. Whereas "a *plan* includes provisions relevant to the care of a child, such as the child's living arrangements, *medical care*, and school placement." (Emphasis added.) *Id.* at ¶ 30, citing R.C. 3109.04(G). The Court explained that R.C. 3109.04(E)(1)(a) refers to a modification of a prior decree allocating parental rights and responsibilities while (2)(b) refers to a modification of the *terms* of a shared-parenting plan.

{¶ 15} In *Hynd*, unlike the instant case, the parents did not have a shared-parenting plan and the decree denoted mother as residential parent and legal custodian. *Hynd* at ¶ 27. Although the decree did not set forth an express directive recognizing mother as the parent with medical-decision-making authority, it was inferred because mother was the residential parent and legal custodian. *Id.* When the trial court granted father's motion to modify parental rights and responsibilities, specifically granting father medical-decision-making authority, the court did so without making a change-of-circumstances determination. *Id.* at ¶ 28. The Eleventh District Court of Appeals reversed and remanded the trial court's decision with instructions to make the proper findings under R.C. 3109.04(E)(1)(a), because the trial court did not have authority to modify a *decree* without such findings. (Emphasis added.) *Id.*

{¶ 16} In the instant case, the parties have a SPP and Mother moved to modify the medical-decision-making authority, which is a *term* in the SPP. Therefore, R.C. 3109.04(E)(2)(b) applies and it provides that

> [t]he court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶ 17} Because the trial court only modified a term of the SPP, it was not required to make "a change of circumstances" finding or weigh the benefit and harm

to the child as necessitated under R.C. 3109.04(E)(2).  Accordingly, Father's second assignment of error is overruled.

## 2.  Best Interest of the Child

{¶ 18}  In Father's first assignment of error, he contends that the trial court "failed to cite any factors it considered under R.C. 3109.04(F)(1)(a)-(j), making the best interest finding arbitrary and an abuse of discretion." (Father's brief p. 17.)  R.C. 3109.04(F)(1) sets forth factors for the trial court to consider when analyzing the best interest of the child.  It states:

(1)  In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a)  The wishes of the child's parents regarding the child's care;

(b)  If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)  The child's adjustment to the child's home, school, and community;

(e)  The mental and physical health of all persons involved in the situation;

(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)  Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; . . . .

(i)  Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)  Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 19}  Contrary to Father's assertion, the trial court addressed each of the applicable factors set forth in R.C. 3109.04(F)(1).  The magistrate stated:

The Magistrate finds that [Mother] wants the Shared Parenting Plan to be amended to the extent that she alone is the parent that makes medical decisions for the minor child to the exclusion of [Father].  [Father] does not want [Mother] to be the parent making the medical decisions for the child.  [Father] wants to continue to have the parties make joint decisions regarding medical decisions for the child and to follow the recommendations of the child's treating physician if they do not agree.  [Father] does want the medical provision of the Shared Parenting Plan modified to the extent that no medical professional, charged with making a medical decision for the child, because the parents were unable to agree on the medical decision, be permitted to impede the legal rights of the parents.  The Magistrate finds that [Father] believes that federal legislation gives a parent a right to refuse treatment of a medical treatment that has not been fully approved.

The Magistrate did not interview the minor child with regard to his wishes and concerns regarding the issue of medical decision making.

The Magistrate finds that the child spends equal time with each of his parents.  The Magistrate finds that that [Mother] believes that the child shows apathy toward school.  The Family Evaluation Services report also set forth that in interviews with the child's fourth grade teachers it was reported the child was intelligent and quiet, though apathetic about his education.  The child is receiving an "A" grade in all subject areas.  The Magistrate finds that the parties have an ongoing disagreement surrounding the extracurricular activities in which the child participates.

The Magistrate finds that both [Father] and [Mother] love the minor child and the minor child loves his parents. The Magistrate is concerned by the fact that the child would tell his mother that he does not trust her like he trusts his father. The Magistrate is further concerned by the information surrounding court and the court process the child is aware of and the inclusion of the child in matters that should strictly be handled by the adults in his life.

The Magistrate finds that [Mother] engages the services of a mental health provider. The Magistrate further finds that no evidence was presented that suggested that due to [Mother] seeking the services of a mental health provider that she is somehow unfit to be the parent to make medical decisions for the child. The Magistrate finds that no evidence was presented as to whether [Father] engages in mental health counseling. The Magistrate finds that [Father] experienced Atrial Fibrillation approximately 15 years ago, but since has had no other heart issues. The Magistrate finds that no evidence was presented that [Mother] has any ongoing physical health issues.

The Magistrate finds that no evidence was presented that either parent was planning on relocating outside Ohio.

The Magistrate further finds that no evidence was presented to suggest that either parent was more likely to honor and facilitate parenting time than the other parent. No evidence was presented that either parent continuously or willfully withheld the child from the other parent.

(Magistrate's Decision, Sept. 18, 2023.)

{¶ 20} The trial court then went on to consider some of the best-interest factors set forth in R.C. 3109.04(F)(2). Specifically, the trial court considered the parties' ability to cooperate and make decisions jointly and the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent. R.C. 3109.04(F)(2)(a) and (b). It is here where the magistrate determined that the parties had some difficulties, stating that

[t]he Magistrate finds that a plethora of evidence presented showed the inability of the parents to make joint decision for the medical care of the child. The child received routine medical and dental care. But

when decisions had to be made that went beyond routine care the parents have not shown the ability to cooperate and compromise their positions. Neither changed their position on the COVID-19 vaccine, the child received the vaccine over the objection of [Father] based upon the recommendation of his treating physician. To the extent the child receives an annual flu shot it is over the objection of [Father] and based upon the recommendations of his treating physician. The parents discussed but never agreed to a new dentist for the child. [Mother] went along with [Father's] choice of orthodontist in order to get the child the orthodontic treatment he needed. [Mother] dictated the dermatologist that she took the child to for a baseline exam without the input of [Father], although she did inform him in advance of making an appointment that she wished to take the child to that particular dermatologist. [Father] took the child for an eye exam without informing [Mother] of any concerns with the child's eyesight or that he had in fact made an appointment for the child to be seen by a local optical center. [Father] intends to eventually have the child examined by a cardiologist over the objection of [Mother] and no evidence was presented as to whether the child's pediatrician has recommended the examination. The Magistrate finds that the parties are unable to cooperate and make joint medical decisions for the benefit of the child. The fact that the child has received care does not mean that the parties have cooperated and made joint decisions in the receipt of that care.

The Magistrate finds that another factor to consider is ability of each parent to encourage the sharing of love, affection and contact between the child and the other parent. The Magistrate finds that no evidence was presented that one parent denies the other parent his/her parenting time. The Magistrate has concerns that the child receives information from [Father] that makes the child question [Mother] or keep things from her. Specifically, the Magistrate is concerned that the minor child would report to his mother that he does not trust her as much as he trusts his father. No evidence was presented to suggest that [Mother] has done anything to the child that would question his ability to trust her. The Magistrate finds that the minor child has two parents that love him, neither of his parents should do or say anything to the child to suggest that one of his parents does not love him enough or is not acting in the child's best interest.

(Magistrate's Decision, Sept. 18, 2023.)

{¶ 21} Contrary to Father's assertion, the trial court thoroughly set forth all of the factors considered when making the final decision to modify the medical-decision-making term of the SPP.

{¶ 22} Father also argues that the trial court's decision modifying the term requiring the parties to "accept the recommendation of the treating healthcare provider" was against the manifest weight of the evidence because even when the parties disagreed on medical care, the recommendation of the healthcare professional was historically followed, which followed the original SPP. Father asserts that final decision-making authority should remain with the healthcare provider, because Mother "intend[s] to exclude Father entirely from participation in [the child's] medical care." (Father's brief, p. 17, citing Mother's testimony at tr. 94.)

{¶ 23} Father's fears are not without merit because in Mother's sole assignment of error, she argues that the trial court abused its discretion by not excluding Father completely from the child's medical decisions. She contends that she should have sole medical-decision-making authority because the evidence establishes that the Father defies all attempts of Mother to work together.

{¶ 24} Contrary to Mother's assertion, the trial court noted numerous examples of how the parties interact ultimately concluding that "[n]*either* party appears to consider the other's opinion on *any* issue." (Emphasis added.) The trial court specifically found that

> the parties love their son and want what he/she believes is best for him. Unfortunately for the child, they cannot agree on what is best for the child. The evidence showed that every issue becomes a fight. *Neither*

*parent presented evidence to show one time where one expressed a want, desire, concern for the child and the other agreed with that same want, desire, concern and followed the requested course of action.* The Magistrate finds that the parties have poor communication, but they do communicate. They exchange emails, text messages, and they even have telephone communication. But all the communication does not matter if neither is willing to listen and consider the other parent's positions or concerns.

(Emphasis added.) (Magistrate's Decision, Sept. 18, 2023.)

{¶ 25} The trial court detailed several examples where both parties refused to agree with each other about medical interventions, as well as numerous other topics. The trial court, however, concluded that Mother followed the SPP by attempting to discuss interventions with Father, while Father did not. The trial court based this decision on several examples where Mother initiated the conversation with Father regarding the child seeing a specialist, then the parties would go back and forth ad nauseum and rarely come to a decision. Thereafter, Mother would visit the child's pediatrician for the referral. Whereas, when Father wanted the child to see a specialist and Mother would not agree, Father would not visit the pediatrician. So, the next time Father wanted the child to see a specialist, he bypassed Mother completely and informed her after the fact.

{¶ 26} In addition, the trial court noted that in a number of communications, Father was condescending to Mother. The court stated that "[h]e includes subtle and not so subtle threats of further court intervention. Often [Father's] responses are couched in a manner that imply that [Mother's] position was harmful to the child or somehow not in the child's best interest. At times he provides her choices with dire consequences for her if she does not make the correct choice. Additionally, he

reminds her of his Second Amendment Right to own a firearm." (Magistrate's Decision, Sept. 18, 2023.)

{¶ 27} The magistrate repeatedly stated that both parties love their child, spend equal time with their child, and have his best interests at heart, but "both know that they do not coparent effectively, and not surprisingly they disagree about what process they should participate in to assist them in being better co parents. [Father] has suggested they participate in joint counseling. [Mother] does not believe that joint counseling would be good for her mental health. She suggested that if [Father] were to get individual counseling, she might be willing to reconsider joint counseling. She has also suggested the utilization of a parent coordinator as set forth in their Shared Parenting Plan. [Father] does not believe a parent coordinator will be effective. No consensus, therefore ongoing gridlock, and court intervention." (Magistrate's Decision, Sept. 18, 2023.)

{¶ 28} Unfortunately, the record is clear that both Mother and Father bait and antagonize each other about all things involving their child. This was evident at trial when the testimony took several days because *neither* party would answer the questions directly. Nevertheless, as the Twelfth District aptly stated, "[D]ecisions concerning allocation of parental rights and responsibilities are guided by a child's best interest and should not be used as a [club] to punish a misbehaving parent [or parents]." *In re C.L.W.*, 2024-Ohio-1519, ¶ 30 (12th Dist.). Therefore, when considering R.C. 3109.04(F)(1), "'[n]o one factor is dispositive, and the court has

discretion to weigh the factors as it sees fit.'" *In re N.J.V.*, 2025-Ohio-375, ¶ 52 (8th Dist.), quoting *In re C.L.W.* at ¶ 40.

{¶ 29} In this case, the record establishes that the magistrate considered the best-interest factors, the four days of testimony, numerous exhibits, and the report of the Family Evaluation Services, and eventually concluded that it was in the best interest of the child that Mother and not the treating healthcare provider would have the final decision-making authority when the parties could not agree on treatment and that Father would have final decision-making authority if the parties could not agree on a successor medical provider. The magistrate also addressed Mother's concerns regarding counseling and permitted Mother to consent to the child talking to the school counselor. It is also clear from the record that the trial court reviewed the entire record and adopted the magistrate's decision after specifically noting that the case turned on the credibility of the parties and the magistrate was in the best position to assess their credibility. This court agrees.

{¶ 30} Upon a thorough review of the record, we find the trial court's decision overruling the parties' objections and adopting the magistrate's decision was not an abuse of discretion. Furthermore, we find that the trial court's decision was supported by the manifest weight of the evidence.

{¶ 31} Accordingly, Father's first assignment of error and Mother's sole assignment of error are overruled.

{¶ 32} Judgment affirmed.

It is ordered that appellee/cross-appellant recover from appellant/cross-appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
DEENA R. CALABRESE, J., CONCUR