[Cite as *Marts v. Marts*, 2025-Ohio-3196.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| BRET MARTS, | **CASE NO. 2025-P-0004** |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| VANESSA MARTS, | |
| Defendant-Appellee. | Trial Court No. 2021 DR 00262 |

---

## OPINION AND JUDGMENT ENTRY

Decided: September 8, 2025
Judgment: Affirmed

---

*Danielle C. Kulik*, Cordell & Cordell, 5005 Rockside Road, Suite 350, Independence, OH 44131 (For Plaintiff-Appellant).

*John M. Dohner* and *Todd A. Mazzola*, Roderick Linton Belfance, L.L.P., 50 South Main Street, 10th Floor, Akron, OH 44308 (For Defendant-Appellee).

SCOTT LYNCH, J.

{¶1}    Plaintiff-appellant, Bret Marts, appeals from the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, naming defendant-appellee, Vanessa Marts, the residential parent of the parties' minor children.  For the following reasons, we affirm the judgment of the lower court.

{¶2}    On June 21, 2021, Bret filed a Complaint for divorce from Vanessa.  They married in 2013 and had two children, I.M., born in 2017, and D.M., born in 2019.  Bret requested shared parenting.  The court issued a temporary restraining order which, in part, prohibited the parties "from permanently removing the minor children . . . from the

jurisdiction of this Court or concealing the[ir] whereabouts . . . during the pendency of the action." Vanessa filed an Answer, requesting to be designated residential parent. On August 24, 2021, the magistrate designated Vanessa temporary residential parent.

{¶3} Vanessa, a Canadian citizen, filed a motion to relocate the children to Plympton-Wyoming, Ontario, Canada, on June 21, 2022, asserting that her support network lived there and she needed assistance to care for I.M. Vanessa stated that she had obtained a job in Canada in reliance on Bret's representation that he did not oppose the move, although he ultimately changed his position and opposed the motion. Following a hearing, the court deferred ruling on the issue. On July 8, 2022, Vanessa filed a notice of intent to relocate. Bret filed an objection to the relocation.

{¶4} During the pendency of the matter, the parties entered into a temporary parenting time agreement which provided that Bret have no more than two consecutive unsupervised nights with the children.

{¶5} A trial was conducted in 2022. The following pertinent testimony was presented:

{¶6} Vanessa Marts, who is originally from Canada, testified that she and Bret met at a conference in Akron while she was working with Goodyear Canada and he was working for Goodyear Akron in 2009. She took a position at Goodyear Akron in 2012 and got a permanent residency card in the United States after she and Bret married. They had two children. Vanessa expressed concerns regarding Bret's parenting, indicating that he was "robotic" and sometimes did not interact verbally with the children. She testified that when I.M. was around ten months old, she observed Bret on the baby monitor masturbating beside her crib. She also expressed concerns with Bret's father

failing to adequately supervise the children in the past when watching them.

{¶7}   In March 2022, after the divorce proceedings had been initiated, Vanessa told Bret she wanted to move to Canada and obtained a job there.  She and their two children now reside near Vanessa's mother and stepfather in Plympton-Wyoming, Ontario, Canada, approximately four hours from Bret's residence in Ohio.  Her brother and other relatives also live close to them.  Vanessa's parents watch the children nearly every day while she is at work.  The children presently have friends in Canada and receive medical and dental care there.

{¶8}   Vanessa explained an incident that occurred in 2022, where I.M. began to have serious behavioral issues, which included not eating or drinking, and refusing to participate in various activities.  This resulted in several hospital visits.  I.M. was diagnosed with Pediatric Acute-onset Neuropsychiatric Syndrome (PANS).  I.M. began to have separation anxiety and would not leave Vanessa's side.  Vanessa seeks the assistance of her parents when I.M. has behavioral issues.

{¶9}   Bret Marts lives in Akron.  He indicated that if the children remained in Canada, he wished to move closer to them, although he had objected to the move there.  He had recently been laid off from his job at Goodyear but would like to remain in the Akron area since he has lived there since 2002, participates in activities in the area, and has friends there.  He requested shared custody and had sought out day care in the area.  He believes he is able to care for his children without supervision.

{¶10}  Bret testified that although he had discussed a pornography addiction with his therapist, he had never been diagnosed with such an addiction, and he would use parental locks when his children were old enough to use shared electronic devices.  He

Case No. 2025-P-0004

indicated that he had taken a shower with the children but would not do so in the future.

{¶11} As to the children's health, Bret indicated that they had suspected dairy intolerances but he had given them a cooked dairy test as he suspected that D.M. no longer had such an intolerance but did not seek medical advice on this issue. They became sick afterward but he believed it was due to other issues. Bret continues to monitor I.M. for PANS-related issues. While he had a preplanned vacation with the children to South Carolina in 2022, he moved the trip to Ohio to be closer to Vanessa and medical professionals.

{¶12} Debra Vannatter, Vanessa's mother, testified that after I.M.'s birth, she travelled to Ohio to assist with her care. When Vanessa returned to work, Vannatter remained in the Marts' residence three weeks out of the month to act as I.M.'s nanny for a period of time. Since Vanessa and the children moved to Canada, they have been living in a residence across the street from Vannatter. Vannatter and her husband care for the children on a daily basis. Other family members live nearby and the children's uncle cares for them on occasion. She opined that the children love being in Canada and observed that I.M. did not like to be detached from her mother. Vannatter believed that at least two people were needed to deal with I.M. during her PANS "episodes."

{¶13} Vannatter indicated that Vanessa taught skills to Bret to become a good father and that he did not take initiative with the children. She did not believe that he would be able to get the children ready on his own and observed that he had issues with organization. She also observed that he had some odd behaviors, including kissing his father-in-law on the lips and getting in bed with Vannatter when she was lying down.

{¶14} Beverly Ann Marts, Bret's mother, lives around three hours from Brett's

Case No. 2025-P-0004

residence and travels to his house about once a month. She indicated that he does not need to be supervised with the children and is able to care for them on his own. She indicated that Bret allows I.M. to sleep in his bed to avoid keeping her brother awake. She had never witnessed any inappropriate interactions or content on his electronic devices. She briefly talked to Bret about moving to Akron to assist with the children, had not taken action to do so, but would if the children lived with Bret.

{¶15} Marts indicated that during the initial PANS incident, she travelled to assist with I.M. during two different weeks. She observed that Bret was able to help get I.M. out of these patterns by talking to her and distracting her. She did not observe that I.M. asked for her mother at this time but instead was generally despondent. As to the issue with the dairy sensitivity, she was aware that a homeopathic doctor diagnosed the children but testified she did not observe a sensitivity in the children.

{¶16} Dr. Collin Meyers, Bret's therapist, indicated that he had high-functioning autism spectrum disorder and ADHD and copes well with these disorders. He believed the children were not in danger in Bret's care, he should be able to have them in excess of two nights in a row, and he manages I.M.'s meltdowns appropriately. Dr. Meyers testified that Bret had admitted to watching pornography but stated he had stopped doing so. He did not believe he had any sexual disfunction or that the masturbation incident should prohibit him from seeing his children.

{¶17} Dr. Aimee Thomas performed a psychological evaluation of the parties. She indicated that Bret is "very attentive with the children" and has a strong attachment and bond with them. She had recommended he not have more than two consecutive days of overnight visits with the children due to their age and level of activity and given

Case No. 2025-P-0004

his ADHD and Asperger's diagnoses.  She indicated that he accepted feedback on boundaries in relation to the masturbation and showering incident.  She recommended both parties undergo counseling but found that both could care for the children.  She believed it would be best for the children for them to live in closer proximity.

{¶18}  Tiffany Leonard, a pediatric nurse practitioner at Akron Children's Hospital, treated I.M. for behavioral issues and she was diagnosed with anxiety.  In May 2022, there was significant defiance by I.M. who stopped eating and had been admitted to the hospital.  She struggled with separating from her mother.  Leonard indicated that she believed Vanessa needed support in caring for I.M. during her mental health "episodes."  Leonard indicated that Vanessa was very involved in her daughter's mental health treatment and researched ways to provide her with additional treatment.

{¶19}  Two of Bret's neighbors, Andrew Gramata and Matt Bidinger, who saw Bret with his children on a regular basis, testified that Bret had a good relationship with them.  Gramata indicated that the children called him Uncle Andy.  He did not see the children favor one parent over the other.

{¶20}  James Brightbill, the guardian ad litem, recommended that Bret be designated residential parent for school purposes and Vanessa be granted parenting time.  He did not have concerns with either parent's ability to care for the children.  He believed that Vanessa's move to Canada caused problems in this matter and he felt that it diminished Bret's role as the children's father.  He did not observe the children after they moved to Canada.

{¶21}  A magistrate's decision was filed on July 26, 2023.  The magistrate found that although Vanessa testified that Bret initially appeared distant toward the children,

Case No. 2025-P-0004

had viewed pornography regularly in the past, and "was not adept in providing parenting care" when the children were young, he had made efforts to address these concerns. Similarly, the magistrate found that "several socially awkward and quirky things Plaintiff said or did" happened before therapy. He concluded that Vanessa had predominantly provided parenting care for the children and was the "primary driving force and had the initiative to pursue quality health and appropriate care." The magistrate found that the guardian ad litem report and Dr. Thomas' report had limited value since they were issued before the relocation and I.M.'s mental health crisis. He concluded that it was in the best interest to name Vanessa the residential parent since the children were doing well, she had previously been their primary care giver, and there was no justification for changing the parenting scheme.

{¶22} Both parties filed objections to the magistrate's decision. The trial court overruled the objections. In pertinent part, the court characterized the masturbation incident as "extremely inappropriate" and found it "was concerning, especially when considered in conjunction with subsequent instances of inappropriate behavior"; found "it became apparent Plaintiff had an addiction to pornography"; found Bret's removal of a pornography blocker from his electronic devices to be "troubling"; and expressed concern that Bret gave the children cooked dairy to test their tolerance level without the advice of a physician. It observed that "[w]hether the relocation [to Canada] should or should not have happened, it did," and that Bret could move closer to his children. The court weighed the best interest factors, finding: equal parenting time could not be achieved; the children had a close bond with their maternal and paternal families; the children are adjusted to their environment in Canada; Bret had mental health concerns as well as issues with

pornography; both parents were likely to honor parenting time; and Vanessa's move was not to minimize Bret's relationship but to get assistance with the children's needs. It concluded that the magistrate did not err in making his findings of fact, it is in the children's best interest to reside primarily with Vanessa in Canada, and the recommended shared parenting plan should be adopted. Pursuant to that shared parenting plan, the children would reside with Vanessa and Bret would receive alternating weekend visitation, including a three-day weekend each month.

{¶23} Bret timely appeals and raises the following assignment of error:

{¶24} "The trial court abused its discretion by finding mother to be the medical decision maker and residential parent for school purposes in Canada knowing that she relocated against the mutual restraining order and against the best interests of the children."

{¶25} "The trial court's judgment involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Ruff v. Ruff*, 2023-Ohio-2349, ¶ 62 (11th Dist.). "'This court, as well as the Supreme Court of Ohio, has held that decisions involving the custody of children are within the discretion of the trial court and accorded great deference on review.'" (Citation omitted.) *Id.* Because the trial court is in the best position to observe the witnesses and parties, "the reviewing court . . . should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

**Best Interests of the Children**

{¶26} "When making the allocation of the parental rights and responsibilities for the care of the children . . . the court shall take into account that which would be in the

Case No. 2025-P-0004

best interest of the children." R.C. 3109.04(B)(1). "In determining the best interest of a child . . . the court shall consider all relevant factors," including, in pertinent part, "[t]he wishes of the child's parents regarding the child's care"; "[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest"; "[t]he child's adjustment to the child's home, school, and community"; "[t]he mental and physical health of all persons involved"; "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights"; and "[w]hether either parent has established a residence . . . outside this state." R.C. 3109.04(F)(1)(a), (c)-(f), and (j).

{¶27} Bret raises several arguments in support of his contention that the custody decision was in error. First, he contends that all pertinent best interest factors weigh against Vanessa, necessitating a best interest finding in his favor. This argument requires this court to adopt only his view of the evidence, a conclusion the record does not support.

{¶28} As to those best interest factors relating to their relationships with others and adjustment to their community, Bret contends that the children do not have a community in Canada and only have strong bonds in Ohio. However, the testimony demonstrated that, in Canada, the children live in close proximity to several maternal relatives, including their grandmother with whom they spent significant time throughout their lives, and have friends in their school and daycare. In Ohio, they were not yet old enough to be involved in school and their paternal relatives lived over three hours away at the time of the hearing, with no definite plans to move closer. Testimony established that they were comfortable in their present environment in Canada. Further, their relationship with their maternal relatives is beneficial in meeting the need for childcare

Case No. 2025-P-0004

and assistance, particularly during I.M.'s mental health episodes.

{¶29} As to the physical and mental health of the parties, Bret argues that any issues regarding his mental health were "debunked" while the psychological evaluator found Vanessa needs to work through minimizing his role in the children's life. This again views the facts through one perspective. There was testimony that both parents should continue counseling and there was no question that Bret himself testified he had expressed he had a "pornography addiction" and there were several instances of behavior that could be characterized as "odd." While these behaviors may or may not carry much weight, it was not improper for the trial court to consider them as one factor in its decision. The court also made it clear that it considered other significant issues, such as Vanessa's primary role as care giver for the children and her responsibility for many issues in her children's life including their medical treatment. It is evident that the children have a close bond to her and that separation from Vanessa had a considerable impact on I.M., who struggles with anxiety. As noted above, it also considered the significant and well-established support system of relatives the children have in Canada. This is certainly a relevant consideration given I.M.'s mental health concerns and need for intervention during any mental health "episodes."

{¶30} Finally, Bret argues that those factors relating to parenting time and the move out of the country also are favorable to him. First, we do not find that the record supports the conclusion that Bret was denied parenting time. The record does not show that Vanessa failed to allow Bret to visit with the children or to comply with court orders allowing visitation. Further, while moving to Canada did make splitting parenting time equally unfeasible, the distance between Bret and Vanessa is approximately four hours,

Case No. 2025-P-0004

which has allowed him to exercise weekend visitations.

{¶31} While Bret places great emphasis on the fact that Vanessa chose to move the children while the custody dispute was pending and should not have done so given the restraining order, it does not follow that Vanessa should not be named residential parent where it is in the best interest of the children. There is no question that courts may consider a unilateral decision to move a child and it may impact their consideration of factors such as a child's ties to that community. *See Marlowe v. Marlowe*, 2023-Ohio-1417, ¶ 144 (6th Dist.). However, it has been held that decisions "concerning allocation of parental rights and responsibilities are guided by a child's best interest and should not be used as a [club] to punish a misbehaving parent." *S.S. v. T.M.*, 2025-Ohio-1827, ¶ 28 (8th Dist.), citing *In re C.L.W.*, 2024-Ohio-1519, ¶ 30 (12th Dist.). The testimony supported the court's best interest determination where it is clear the children have always had a close relationship with their mother, her family in Canada were caregivers to the children, and, given their age, they had limited well-established, close ties in northeast Ohio. While Bret cites authority for the proposition that a burden rests with the party seeking to relocate to demonstrate it is in the best interest of the children, *Salisbury v. Salisbury*, 2006-Ohio-3543, ¶ 101 (11th Dist.), that case relates to a change of custody. Nonetheless, there was evidence in the record to support the trial court's decision that living in Canada was in the children's best interest.

**Review of Magistrate's Decisions De Novo**

{¶32} Bret next argues that the court erred in making findings that differed from the magistrate's, such as concluding that his various behaviors were relevant to the best interest determination while the magistrate credited Bret for changing his behaviors and

Case No. 2025-P-0004

seeking therapy. Pursuant to Civ.R. 53(D)(4)(d), in ruling on objections to a magistrate's decision, the trial court shall "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." A trial judge should not adopt a magistrate's report "as a matter of course" and the failure to conduct an independent review renders the adoption of the magistrate's decision "defective as a matter of law." (Citation omitted.) *In re Hetmanski*, 2024-Ohio-1646, ¶ 74-75 (11th Dist.). Under this de novo review, "it is the prerogative of the trial court to substitute its judgment for that of the magistrate." *W.R. Martin, Inc. v. Zukowski*, 2006-Ohio-6866, ¶ 35 (11th Dist.). Whether Bret's behaviors and mental health issues impacted the children and his parenting are certainly issues that can be open to multiple interpretations. We find that the trial court conducted an independent review as required under Civ.R. 53(D)(4)(d), as evidenced by its thorough judgment entry ruling on the objections to the magistrate's decision and weighing the best interest factors.

**Review of Trial Court Findings for Arbitrariness**

{¶33} Finally, Bret argues that various factual findings were inaccurate or arbitrary. At oral argument, his counsel contended that, rather than making findings consistent with the record, the trial court tailored the facts to the outcome that the court favored, a finding that the mother should be residential parent. He argues that these underlying findings were an abuse of discretion. We do not find this argument to have merit, however, since the court's findings were not contrary to the evidence in the record or an unreasonable interpretation of the competing evidence presented by the parties.

{¶34} First, Bret contends that the court should not have found that it was

inappropriate for him to masturbate in the room with a child present but not that it was inappropriate for the couple to have sex while the child was in the room. Similarly, he argues that the court erred in considering an "issue" that arose with the nanny which was not clearly described in the record. Even presuming these were significant issues in the present matter, the court found that Bret's actions were part of a pattern of inappropriate behavior, including showering and/or bathing with the children, having pornography without parental controls, and laying in bed with Vanessa's mother.

{¶35} Bret also takes issue with the trial court's conclusion that he should move to be closer to the children when Vanessa chose to relocate to Canada. In relation to this analysis, it appears the court was emphasizing the lack of family ties in the Akron area in contrast with the ties the children had to Canada. While it is certainly Bret's choice whether to move, we find no error in the court merely considering possible scenarios which could benefit the children.

{¶36} Bret also disagrees with the court's finding that he should not have conducted allergy testing on his own when Vanessa also had not used a proper doctor when diagnosing the children. The court found that he gave the children dairy products to conduct his own testing when he has no medical experience and should have consulted with Vanessa or a physician before doing so. There was limited testimony about the dairy sensitivity diagnosis but Bret's mother testified that a homeopathic doctor diagnosed them. Regardless, Bret himself indicated that at some point he was aware there was a dairy sensitivity and it was reasonable to at least consult with Vanessa on this issue given her extensive involvement with the children's medical care.

{¶37} Bret argues that the judge cannot "diagnose a pornography addiction." The

Case No. 2025-P-0004

court did not find that there was a diagnosis of a pornography addiction but found: "whether or not there was a formal diagnosis, much of the testimony, even by Plaintiff, referred to Plaintiff's issues as an 'addiction.' The Court treats his issues as an addiction." It is evident the court took into account Bret's own statement that he had referred to his viewing of pornography as an addiction. It was certainly relevant for the trial court to consider this in relation to how it may impact the children's best interests.

{¶38} Bret also contends that the court erred in finding that the children were in a stable home in Canada since their residence was only temporary. Vanessa testified that she was living in her present residence month to month and had difficulty purchasing a home while the divorce was pending. She indicated that if she could no longer rent her present residence, she would rent another location. We do not find it arbitrary to conclude that Vanessa could provide a stable home in Canada.

{¶39} Finally, Bret reiterates his arguments regarding Vanessa's decision to move out of the country. He cites *Manshadi v. Mossayebi*, 2011-Ohio-1469 (7th Dist.), in support of his arguments. There, the trial court named the father residential parent where the mother wished to move to Canada, noting that this factor weighed heavily against the mother. *Id.* at ¶ 54. In *Manshadi*, however, the Seventh District did not hold that the trial court was required to grant the father custody but simply that it did not abuse its discretion in doing so. *Id.* at ¶ 58 ("[a]lthough the court could have awarded custody to the mother, the failure to do so was not an abuse of discretion"). The same is the case here.

{¶40} The sole assignment of error is without merit.

{¶41} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, naming Vanessa the residential parent of

Case No. 2025-P-0004

the minor children, is affirmed.  Costs to be taxed against appellant.


JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-P-0004

## JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignment of error is without merit. The order of this court is that the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.

Costs to be taxed against appellant.

JUDGE SCOTT LYNCH

JUDGE JOHN J. EKLUND,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0004